[No. 3771.]

## NIX v. MILLER.

1. CORPORATIONS—LIABILITY OF DIRECTORS—MISAPPROPRIATION OF FUNDS—NEGLIGENCE.

Where a director of a corporation by his negligence and inattention to the corporation business permitted his codirectors to misappropriate the funds of the corporation to the loss of the creditors, he cannot escape personal liability to the creditors on the ground that he did not participate in the acts of misappropriation.

2. SAME—PAYING INDIVIDUAL DEBT OF DIRECTOR.

The application of corporate funds to the payment of the individual debts of one of the directors instead of paying the debts of the corporation is a misappropriation of corporate funds such as will make the directors who make such misappropriation personally liable to the creditors.

3. SAME—SUBSEQUENT CREDITORS.

Where the misappropriation of corporate funds was intended to defraud subsequent creditors and does defraud them, the directors become personally liable to such subsequent creditors.

4. SAME—RESIGNATION OF DIRECTOR.

Where the funds of a corporation are misappropriated with the intention of defrauding subsequent creditors, a director cannot escape liability to such subsequent defrauded creditor by the fact that he resigned before the creditor became a creditor of the corporation, but after the misappropriation of the fund.

5. SAME—FAILURE TO ACCOUNT.

Where in an action by a creditor against the directors of a corporation to hold them personally liable it is shown that valuable goods and merchandise came into the hands of the corporation while they were directors more than enough to have paid plaintiff's judgment, and the directors fail to account for such goods, they will be held liable.

6. APPELLATE PRACTICE—PLEADING.

It is too late to raise an objection to a complaint in the appellate court that should be raised by special demurrer, or when the complaint was treated on the trial as sufficient and evidence admitted without objection upon the assumption that it was sufficient.

7. APPELLATE PRACTICE—REHEARING—CHANGE OF BASE.

Parties will not be permitted on a rehearing on appeal to change base and set up new and inconsistent theories from those urged on former hearing.

8. CORPORATIONS—LIABILITY OF DIRECTORS—PLEADING.

In an action of a creditor of a corporation against the directors to hold

them personally liable, an allegation that the directors had fraudulently misappropriated the funds of the corporation "by way of unauthorized dividends and otherwise" is broad enough to admit evidence of a misappropriation by paying the individual debts of one of the directors.

*Appeal from the District Court of Ouray County.*

Messrs. HENRY & SIGFRID, Mr. R. D. THOMPSON and Mr. HARVEY RIDDELL, for appellant.

Messrs. STOREY & STEVENS, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This action by a judgment creditor of. an insolvent corporation, whose writ of execution on the judgment was returned *nulla bona*, was brought against its directors to recover from them the amount of the judgment, on the ground of their wrongful diversion and misapplication of the corporate assets. The judgment below went against two of the directors, one of whom, Charles H. Nix, has appealed.

We are constrained to say that the argument of counsel is somewhat confusing as to the grounds upon which they rely for reversal. In some parts of their brief there is a blending of legal propositions which have no proper connection with each other, and there is much discussion of other points having no bearing upon the merits of this appeal. But, as we understand the argument, as a whole, the propositions vigorously maintained by appellant may thus be stated:

First, that appellant did not participate in, or consent to, the alleged frauds of the directors that worked the insolvency of the corporation; second, that if, in law, by inattention to his official duty, he may be held to have contributed to the alleged fraudulent acts, they are not of such a character as to entail personal liability upon the director committing them; third, that the alleged frauds were committed before the

plaintiff became a creditor of the corporation, and therefore, even if the appellant participated therein, the plaintiff as a subsequent creditor, cannot call him to account therefor; fourth, that before the plaintiff became a creditor, appellant resigned his office as director, and so cannot be chargeable for any default of the other directors respecting plaintiff's charge of fraud, in so far as it was committed after the time of his resignation; fifth, that he is not liable as a stockholder.

Preliminary to the separate consideration of these propositions, it is well briefly to state the salient facts necessary to an understanding of the case. Previous to July, 1892, the firm of Home & Company, composed of W. S. Home and Charles H. Nix, was engaged in the general merchandise business at the town of Ouray. Being indebted, they conceived the plan of forming a corporation to which to transfer all of the firm property, with a view the better to pay off this indebtedness. In accordance therewith, the Ouray Mercantile Company was formed by the members of this firm, they, and two others named by them becoming the directors, the capital stock consisting of $20,000, which was issued as fully paid up stock, the consideration being the transfer by the firm to it of the firm property burdened with the indebtedness of the firm, which the corporation assumed and agreed to pay. Its business was carried on and purchases made from time to time for a period of eight months, when the corporation, about March 26, 1893, became insolvent, and ceased doing business. The plaintiff sold merchandise to it between the latter part of December, 1892, and the date of insolvency. A judgment against the corporation for the amount of his debt was recovered, and the execution thereon being returned unsatisfied, the plaintiff brought this action against the directors charging them with diversion of the corporate property. The court found, as a matter of fact, that the directors had misapplied over $11,000 of the corporate assets, which caused its insolvency, and this insolvency was admitted at the trial.

1. It may be that the record fails to show any direct, pos-

itive and specific fraudulent act of the appellant concerning the corporate business. He himself testifies that practically he gave it no personal attention, but intrusted it entirely to Home and Sparks, his codirectors. That they were guilty of misappropriation of the corporate assets, as the trial court found, the appellant, in discussing this branch of the case, does not controvert; but his defense is that he had nothing whatever to do with such acts, and did not participate therein, or consent thereto.

It is not every act of a director of a mercantile corporation, whether it be of omission or commission, that entails upon him individual liability for loss to a stockholder or creditor resulting from such act. While the appellant in this case may not be held for knowingly committing a fraudulent act, yet for gross neglect of, and inattention to, his official duty he may be, and under the facts of this case is, accountable to the plaintiff, as a judgment creditor, just as certainly as if he personally did the act that caused the damage. That his neglect of duty in this direction permitted his codirectors to commit the acts that worked the injury to plaintiff, we think entirely clear, and the proof is amply sufficient to uphold the findings of the trial court to that effect.

2. The second point is closely allied with the first, and might well be considered with it. The acts of the directors complained of were nothing more nor less than a diversion of the funds of the corporation from their legitimate channel, and, instead of paying therewith corporate debts, applying them to the payment of the individual debts of one of the directors. We have already decided that appellant's gross neglect of the company's affairs enabled the active managing directors of the company to accomplish this fraud. That this misapplication of the corporate property, which is a trust fund for the creditors, instead of paying therewith the corporate indebtedness, when the necessary result is to make the corporation insolvent, thus rendering creditors unable to collect from it their claims, is a fraud upon them for which they may proceed against the directors after fruitlessly ex-

hausting their remedy against the corporation, is too clear for dispute. Taylor on Private Corps. (3d ed.) §§ 616–619, 756–758, *et seq.;* 3 Thompson on Corps. § 4152, and cases cited; 1 Beach on Private Corps. § 257, (*c*) *et seq.; Cole v. M. I. Co. et al.*, 133 N. Y. 164; *Scott v. Depeyster*, 1 Edwards Ch. 512.

Appellant relies upon *Briggs v. Spaulding*, 141 U. S. 132, as authority for his position that the acts of the directors here are not actionable. The theory of the bill in that case was that defendants were "liable, not to stockholder nor to creditors, as such, but to the bank, for losses alleged to have occurred during their period of office, because of their inattention." The defendants were held not liable, but the charges against them were not of the grave and serious character established against these defendants. In the opinion Chief Justice Fuller thus speaks: "If particular stockholders or creditors have a cause of action against the defendants individually, it is not sought to be proceeded on here, and the disposition of the questions arising thereon would depend upon different considerations." The rule he lays down in that case governing the liability of directors to the corporation would, however, clearly make these defendants liable under the facts of this case, while, confessedly, the duty of directors to creditors is to be determined by a stricter rule.

3. It is held by the highest authority in this country (*Graham v. Railroad Company*, 102 U. S. 148), that the disposal by a corporation of any of its property cannot be questioned by any of its subsequent creditors. Other authorities might be cited, but this case is controlling. It is upon the ground that the diversion of funds occurred before the plaintiff became a creditor that appellant seeks to escape liability. If the facts of the case at bar brought it within the principle of the authority cited, we would not hesitate to recognize the rule therein announced, because not only is it a sound one, but in the absence of a controlling rule in our own jurisdiction (of which there is none) we would be inclined to follow the decision of the august tribunal from which it emanated.

Whether, as contended by appellee, the character of the action in this case is different in kind from the principal case, or whether it is, as claimed by him, one merely to compel an accounting of a trust fund, is not important, for conceding that the two are of the same class, there is enough in the facts of the pending action, as set out in the findings of fact which the record supports, to differentiate this case from that, in this: that the fraudulent acts here complained of were clearly intended to operate as a fraud upon subsequent creditors, and of necessity, as the directors must have known, could have no other effect. So that this case falls within the exception to the general rule that subsequent creditors may not question a fraudulent disposition of their debtor's property made before the relation of creditor and debtor existed, and is brought within that class of cases which hold, where such fraudulent disposition of the debtor's property was intended as a fraud upon subsequent creditors, and necessarily could have no other effect, that the latter may complain. It is also to be observed that it does not appear just what proportion of the fund was misapplied before, and what after, the plaintiff became a creditor. Upon the showing made by plaintiff it was incumbent upon the defendants to make this point clear.

4. If the appellant resigned as a director before the plaintiff became a creditor, it does not necessarily follow that this releases him from all previous acts of misfeasance. If, as we have held, the diversion of assets was intended as a fraud upon subsequent creditors, and so resulted, and appellant, by his inattention to duty, contributed thereto so as to make him personally holden, the same as those directly guilty of the fraud, his liability may have become fixed for past acts before his resignation took effect, so that, in one sense, and as to past acts, it is immaterial as to the exact date of his resignation.

But the finding of the trial court to the effect that this resignation was not effectuated until after the plaintiff became a creditor and the wrong was committed, is not without sup-

port in the record. At the trial the appellant produced a written instrument addressed to the company and signed by him tendering his resignation, and it bore date November 26, 1892, and this was before the plaintiff became a creditor. We may safely concede that the appellant had the right to resign, and that there was no necessity for an acceptance of his resignation by the board of directors, formal or otherwise. That his connection as a director with the corporation, and his liability for all subsequent acts ceased the moment he tendered his resignation to the proper authority, even if that authority refused to accept it, is doubtless true. It may also be conceded that the legal presumption is that a written instrument like this was executed when it bore date, and that it was delivered at the same time. 2 Wharton on Evidence (3d ed.), § 1313; 1 Greenleaf on Evidence (15th ed.), § 38; *Holbrook v. N. J. Zinc Co.* 57 N. Y. 616; *People v. Snyder,* 41 N. Y. 397; Abbott's Trial Evidence, § 10, page 527. Still there is enough in the record to justify the finding that the resignation was not tendered or made till March 18, 1893, when it was formally accepted by the board. Among other things bearing upon this point is the fact that Mr. Nix, when on the stand, did not state when he tendered his resignation, or that it was, in fact, made prior to the date of acceptance, and his subsequent conduct in relation to the corporation was of such a character as to indicate that he still considered himself as a director, and acted in that capacity.

5. The discussion of counsel about defendant's liability as a stockholder is not pertinent. Though there is some reference in the pleadings to stockholders, no case by the pleadings was made against the defendants, as stockholders.

6. Aside from our conclusion upon the foregoing propositions which disposes of the controversy against the appellant, there is another and quite sufficient reason for refusing to disturb the judgment. The merchandise which the plaintiff himself sold to the corporation, in large part, if not altogether, came into its possession while the appellant was still a director. Other purchases about that time, and thereafter, were made,

which were also traced into the hands of the company. The evidence made a strong and persuasive showing of a receipt by the company of valuable goods—certainly equivalent in value to the amount of plaintiff's judgment—all of which were received after the plaintiff became a creditor, and were in some manner disposed of whilst appellant was a director. The defendants, as managing directors, were thus called upon to account for these goods as well as other property which they received, but as to the property so obtained by the company after plaintiff's relation as creditor to the company arose, defendant signally failed to give a satisfactory account. The court was, therefore, entirely justified in making the defendants, including appellant, respond to the plaintiff for the value of a fund which, in good conscience and equity, they should have employed in making good the plaintiff's claim, but which otherwise, and in fraud of his rights, they applied.

Believing that the action of the trial court was right, and that no substantial error was committed, and that, were a new trial to be granted, a different conclusion could not be reached, the judgment below should be affirmed, and it is so ordered.

*Affirmed.*

MR. JUSTICE GABBERT not participating.

### ON PETITION FOR REHEARING.

In support of appellant's petition for a rehearing, new counsel has appeared, and in his brief, discussed some propositions not touched upon at the original hearing. After carefully studying the argument directed against our former conclusions, we see no reason for changing them; but in the light of the criticism of the opinion and the vigorous dissent from the soundness of our views, we submit these additional observations:

1. The objection, now urged for the first time, under the head that the complaint does not state facts sufficient to constitute a cause of action, comes too late. The defects pointed

out are only such as might be the ground of a special demurrer or motion. But if as serious as appellant contends, evidence was introduced in support of the complaint and received without objection, upon the assumption that its allegations were sufficient to constitute a cause of action. Having once treated the complaint as sufficient, defendant may not thereafter question it.

2. Upon the plea of more fully getting before the court the facts of the case at bar, counsel has not been satisfied with the facts appearing in this, but has invoked the aid of another record, viz, in the case of *Nix v. First National Bank*, decided by this court and reported on page 511, 23 Colorado reports. We must not be understood as countenancing the practice of giving counsel a roving commission to aid his case by borrowing facts from another; yet as, in the two cases, there are some common phases, we do not feel that the present excursion is altogether inappropriate, particularly as we ourselves cannot, and should not, shut our eyes to the facts of that case. But what possible aid counsel can derive therefrom, we are at a loss to conceive, for there Nix escaped liability upon the ground that, as a member of the new firm of Home & Company, composed of Home and Nix, he did not assume any of the debts of the old firm of Home & Company, composed of Home & Hartwell, while in the case at bar, one of the points made upon this rehearing, though not before, is that included in the debts assumed by the corporation were those of the old copartnership.

It is a sufficient reply to the present contention to say that parties are not allowed to change front upon an appeal. Appellant's defense in the trial court, and his position at the original hearing, were not based upon the claim that the corporation assumed the debts of the old firm. Escape from liability was sought upon other and entirely inconsistent theories. See *Orman v. Ryan*, 25 Colo. 383.

But if the appellant was in a position to urge the new claim that the old firm's debts were assumed, the findings of the court (and the evidence supports them, particularly when

the facts of the *Bank* case, *supra*, are considered) are conclusive against it.

3. No particular stress was laid upon the statement in the opinion that the assets of a corporation are a trust fund for the creditors. It is not necessary here to rely upon that doctrine except, only, in the sense that it is applicable to the assets of every insolvent debtor. If the rule for disbursing the assets of an insolvent corporation is, as appellant maintains it to be, the same as that governing the disposition of the assets of an insolvent copartnership, it is quite clear that defendant is liable to this plaintiff, for in equity—and this is properly cognizable as an equitable cause of action—the assets of a copartnership firm must be devoted to the payment of the joint indebtedness before they can be used to pay the debts of the individual members. When, therefore, the directors of the corporation applied its corporate assets to the payment of the individual debts of one of the directors, which act necessarily rendered the corporation insolvent, it was as palpably a fraud upon the creditors of the corporation who are in a position to question the act, as would be the act of the member of a copartnership who paid his individual debts with the assets of the firm, when, by so doing, the firm creditors were left without any assets out of which to make their claims.

4.. We did not lightly make the statement in the original opinion that the acts of the directors of the corporation were intended to work a fraud upon its subsequent creditors. We did so because the findings of the trial court are to that effect. We rightly assume that those who conducted its affairs were men of intelligence, capable of reasoning from cause to effect; and when they deliberately formed a scheme, and consistently carried it out, that necessarily must, and did, result in defrauding the creditors of the corporation, we could come to no other conclusion than that they intended the natural and inevitable consequences of their acts.

5. The statement is made in the brief, and also at the former hearing, that, whereas the only fraud charged in the complaint is that defendants caused the insolvency of the cor-

poration by improperly declaring and paying dividends to the stockholders, the finding of the trial court was that the fraud consisted in misapplying the assets by paying the debts of one of the directors. Concerning this the point sought to be made is that the fraud charged was not proved, but the finding, on an issue not in the case, was that plaintiff had committed another fraud. In other words, there is a variance between the allegations and the proof. Counsel are in error in saying that the only fraud charged is the one just referred to. The allegation of the complaint is that the fraud was perpetrated "by way of unauthorized dividends and *otherwise.*" This is broad enough to permit evidence of an unlawful diversion of the assets, other than by way of payment of unlawful dividends.

6. Aside from the foregoing considerations, as we said in the concluding part of the opinion, the court below would have been justified in finding, and we are entirely borne out by the evidence in saying, that, after the plaintiff became a creditor of the corporation, assets that came into its possession after such time, and sufficient to cover plaintiff's claim, were diverted by the directors, and no explanation or accounting thereof was attempted by the defendant.

Other and additional reasons might be given for the conclusion which we have reached, but those already submitted are sufficient. We are satisfied that justice has been done in this case. The petition for a rehearing should be denied, and it is so ordered.