GARBER v. CREWS ET AL.

No. 518. Argued February 6, 7, 1945.—Decided February 26, 1945.

*Mr. P. C. Simons* for petitioner.

*Mr. Christy Russell*, with whom *Mr. L. G. Owen* was on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We are called upon to determine the application in the circumstances of this case of § 23 of the Act of Dec. 23, 1913,[1] which imposes liability upon stockholders of a closed national bank.

November 25, 1929, the American National Bank of Enid, Oklahoma, pursuant to a resolution of its directors,

---

[1] c. 6, 38 Stat. 251, 273, 12 U. S. C. § 64.

which recited that it contemplated "disposing of its current business and thereafter going into voluntary liquidation," sold its business and transferred its assets to the First National Bank of the same city in consideration of the payment of $350,000 and the assumption of its liabilities as disclosed by its books. The purchasing bank retained $110,000 to guarantee the collection of negotiable paper taken over and to cover certain real estate temporarily retained by the seller. American closed its business and promptly distributed the $240,000 cash received ratably amongst its stockholders.

The respondents were parties to an agreement, made in 1922, whereby large sums were deposited in a bank to await the settlement of disputes relative to the ownership of the funds deposited. In 1930 settlement was reached and demand made by the respondents for the payment of the deposit. It was then discovered that the fund had been dissipated and that officers of American, which was a correspondent of the bank of deposit, had participated in the embezzlements. The respondents thereupon brought action in a state court against American, its officers and directors, to fasten liability on the bank and the individuals. A judgment against American for $249,000 was affirmed by the Supreme Court of Oklahoma.[2]

The respondents brought the present suit in the District Court for Western Oklahoma to establish a trust in the liquidating dividend of $240,000 paid by American to its stockholders and to recover from the stockholders the amount necessary to satisfy the balance of the judgment remaining after restitution by stockholders of the liquidating dividend; that is, to enforce the double liability of stockholders. Recovery was had on each cause of action, and also on a third against the former directors of American. The Circuit Court of Appeals affirmed the judgment

[2] *American National Bank* v. *Crews*, 191 Okla. 53, 126 P. 2d 733.

on the first and second causes of action and ordered dismissal of the third.[3]

On November 14, 1929, the petitioner sold his stock in American in good faith and for a valuable consideration to one Oven. December 20, 1929, the stockholders and directors of American held the necessary meetings and took appropriate action under the National Bank Act [4] to go into voluntary liquidation, and thereafter such liquidation went forward. It will be observed that the sale of petitioner's stock was within sixty days of November 25th and within sixty days of December 20th. The petitioner was a defendant in the present action to enforce stockholders' liability and judgment went against him as a stockholder. In a petition for certiorari he urged a number of defenses which the Circuit Court of Appeals had overruled. We granted certiorari limited to the question whether his sale of his stock relieved him of liability.[5]

Does § 23 of the Act of 1913 justify the judgment against the petitioner? The statute reads in part:

"The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer."

We are of opinion that the petitioner is within the plain terms of the law. On its face, the Act grants no exemption due to the facts that the sale was made for consideration and in good faith; that, at the time, American was believed to be solvent; or that the existence of the claim ultimately established by the respondents was then not known to the respondents or to the petitioner.

[3] *Hoehn* v. *Crews*, 144 F. 2d 665.
[4] 12 U. S. C. § 181.
[5] 323 U. S. 701.

Prior to the adoption of § 23 as a part of the Federal Reserve Act of 1913,[6] the liability of shareholders in a national banking association had been imposed by R. S. 5151. Section 23 of the Act of 1913 reenacted, with slight verbal changes, the first clause of the first sentence of R. S. 5151, which provided:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares; . . ."

R. S. 5151 had been before this and other courts for interpretation and, under it, it was held that the gist of any action to impose liability upon a stockholder who had transferred his shares prior to the actual closing of the bank was that the transfer was not a real one or was fraudulent; that is, made with the purpose to avoid the statutory liability.[7] It is obvious that when Congress came to write the Act of 1913 it intended, while leaving the right of recovery for transfers not falling within sixty days of the bank's closing to be adjudged according to the old standard of fraud or intended evasion of liability, to announce a drastic new rule denying effect to all transfers made within sixty days of the bank's cessation of business. It is impossible to read the new enactment of 1913 in any other sense. The only cases dealing with the question in lower federal courts have so held.[8]

---

[6] *Supra,* Note 1.

[7] *National Bank* v. *Case,* 99 U. S. 628; *Bowden* v. *Johnson,* 107 U. S. 251; *Whitney* v. *Butler,* 118 U. S. 655; *Stuart* v. *Hayden,* 169 U. S. 1; *Earle* v. *Carson,* 188 U. S. 42; *McDonald* v. *Dewey,* 202 U. S. 510.

[8] *Fletcher* v. *Porter,* 20 F. 2d 23, and *Collins* v. *Caldwell,* 29 F. 2d 329, are in accord with the decision of the Circuit Court of Appeals in the instant case.

The petitioner insists that, as the initiation of the liquidation of American was voluntary, no cause of action against stockholders arose by reason of this action. But we think that where a bank closes its doors and ceases to transact business the right of creditors or of a receiver to enforce stockholders' liability matures at the time of such closing whether as a result of voluntary action or of adverse action by the Comptroller of the Currency, or of the appointment of a receiver, if at that time the bank was insolvent, as American undoubtedly was, if the respondents' claim was taken into the reckoning.[9]

The judgment of the court below was right and must be affirmed.

*Affirmed.*

---

[9] Compare *Richmond* v. *Irons,* 121 U. S. 27, 48, 50.