No. 15,338.

Bankers Trust Company *v.* Hall et al.

(183 P. [2d] 986)

Decided June 30, 1947.    Rehearing denied July 28, 1947.

Mr. WILLIAM V. HODGES, Mr. HAROLD D. ROBERTS, Mr. ROBERT E. MORE, for plaintiff in error.

Mr. FRED S. CALDWELL, Mr. FREDERICK SASS, Mr. BENJAMIN GRIFFITH, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is an action at law for money had and received upon rescission, as distinguished from a suit in equity for rescission. The parties are here in reverse order of their position in the trial court, and we will hereinafter refer to them as they appeared therein.

The case was first before us in *Hall v. Bankers Trust Company,* 101 Colo. 449, 74 P. (2d) 720. The trial court had previously dismissed the original complaint, after demurrer had been filed, on the ground that limitations and laches appeared on the face thereof. We held that the amended complaint set forth substantially that the plaintiff did not discover the fraud until 1934 (although the transaction of which complaint is made occurred in 1921), and that it was at the time of such discovery, or of the rescission, that the moneys could for the first time be said to be moneys received for the use of plaintiff, and that the defense of laches could not be raised by demurrer but must be affirmatively plead.

In the subsequent trial on the merits, a verdict was returned for the plaintiff and, upon reviewing the proceedings therein *(Bankers Trust Co. v. International Trust Co.,* 108 Colo. 15, 113 P. [2d] 656), we reversed the judgment in favor of plaintiff and remanded the cause for further trial because of the admission of improper evidence offered on behalf of plaintiff. On the subsequent trial the jury returned a verdict for plaintiff in the sum of $26,825, and to review the judgment entered therein the case is before us for the third time.

The salient facts giving rise to the litigation are as follows: In January, 1921, the Bankers Trust Company, a Colorado corporation, published a prospectus concerning a $75,000 note issue executed by the Park Range Live Stock Company, secured by first mortgage on two large cattle ranches—Three Forks Ranch in Routt county, Colorado, and Willow Creek Ranch in Moffat county,

Colorado. This note issue was guaranteed personally by A. R. Reader and E. W. Reader, president and secretary respectively of the Park Range Live Stock Company. Notes of various denominations, totaling $75,000, were sold to various investors by the Bankers Trust Company —the loan being thus known as a split loan, not being sold as a unit to one investor. In 1923 the noteholders of this loan, together with other customers of the Bankers Trust Company, were notified by that company that it was winding up its affairs and going out of business. In January, 1924 the noteholders were advised that the Park Range Live Stock Company had defaulted in its interest payment, and in February 1924 they were notified that the Readers' bank had failed and that taxes for the year 1922 and subsequent years on the ranches had not been paid. In January 1924 the noteholders also were told that the July 1923 interest had been advanced by the Bankers Trust Company, and they were asked to decide "whether further time should be devoted toward a settlement along the lines indicated, or foreclosure should be started at once." A majority of the noteholders requested that the mortgage be foreclosed and that the Bankers Trust Company act as trustee for the noteholders. Rose, one of the noteholders interested in this action, and the one who was instrumental in interesting other noteholders involved in bringing this action, was advised of the situation in July 1924.

No other party but the trustee having bid for the property at the foreclosure sale, sheriff's deed issued to the Bankers Trust Company a year later conveying to it the two ranches. In 1926 these ranches were sold by the Bankers Trust Company to Mr. Frank B. Toole for $100,000.00. Mr. Toole made a number of payments under his contract to purchase, and then, in 1930, defaulted. Payments under the Toole contract were turned over to Dr. Hall and such of his assignors as had advanced money for foreclosure expenses. Rose subsequently endeavored to find a purchaser for the property,

but was unable to do so, and in October 1933 he and the other noteholders were advised that in the "last five years our agricultural sections have been practically impossible to operate ranches or farms without financial loss."

This action was commenced by Dr. J. N. Hall, as the owner of a $2,000 note and as assignee of $17,000 additional notes. The complaint was filed February 11, 1935. The course of the litigation from that point has already been outlined. To this must be added the fact that the twenty-year charter of the Bankers Trust Company expired in 1940. The jury returned its verdict on November 8, 1941. The judgment of the trial court, hereinunder review, became final May 2, 1942. March 8, 1943, a transcript of record and praecipe for writ of error were filed; and March 24, 1943, a motion to quash the duly-issued writ was filed. May 13, 1943, we granted the motion to quash. Subsequently we granted a petition for rehearing and, after briefs had been filed, we vacated the order dismissing the writ of error with leave to represent at the time of final arguments.

██ ██ The argument of counsel for plaintiff follows the theory that the charter of the Bankers Trust Company having expired in 1940, the corporation is no longer in existence; that the suing out of a writ of error in this court, directed to the trial court, is in the nature of a new proceeding; that a new suit cannot be instituted by a nonexistant corporation; that section 66, chapter 41, '35 C. S. A., contains a provision vesting title to property of a defunct corporation in the directors. We believe that this argument fails to give proper recognition to section 68 of said chapter which provides that "The dissolution * * * of corporations * * * shall not take away or impair any remedy given against such corporation, its stockholders, or officers, for any liabilities incurred previous to its dissolution." Rule 111 (a) R. C. P. Colo., provides, inter alia, a writ of error shall lie from the supreme court to a final judgment of any district, county or juve-

nile court. Counsel for plaintiff elected to proceed against the corporation, rather than against the surviving directors, and obtained judgment against it after its charter had expired. We believe plaintiff is now estopped from objecting to the corporation appearing here by writ of error. Furthermore, to deny defendant a right of review in this court from a judgment obtained in a trial court would, in our opinion, violate the provisions of both state and federal Constitutions relating to equal protection of the laws and due process. In *Singer & Talcott Stone Co. v. Hutchinson, et al*, 176 Ill. 48, 51 N. E. 622, the Supreme Court of Illinois, under a statute identical with ours, ruled that a dissolved corporation against whom a judgment had been obtained might sue out a writ of error to review a judgment rendered against it, even though that was technically the institution of a new suit, and that no repeal of a code provision—similar to ours—was intended. We have cited the Singer case, supra, with approval in *Lucifer Coal Co. v. Buster*, 64 Colo. 179, 171 Pac. 61, and believe it should be followed in the instant case. We accordingly adhere to our former ruling, and permanently vacate the order dismissing the writ of error.

Subsequently counsel for plaintiff filed a second motion to dismiss on the ground that Hall had been served in his individual, and not in his representative, capacity. The Bankers Trust Company thereupon, showing that through inadvertance the original summons had not disclosed that Hall was being served as executor, moved that an alias summons be issued, and we granted that motion.

A third motion to dismiss the writ of error, based upon the ground that the writ of error was not issued by this court within the statutory period, is now before us. In *Catlin, Admr. v. Vandegrift*, 58 Colo. 289, 144 Pac. 894, we approved the rule, that until the motion for a new trial is determined a judgment is not final. That case has never been overruled and was followed in nu-

merous cases up to and including that of *Neighbors of Woodcraft v. Hildebrandt,* 96 Colo. 552, 45 P. (2d) 899, where we held that the time of the adverse ruling on the losing party's motion for a new trial marks the date when the judgment becomes final for the prosecution of a writ of error. We do not believe that our new rules of procedure have disturbed this ruling, and accordingly hold that in this case the writ of error was prosecuted in due time.

We now come to the specifications of error.

■ The second specification of points is: *"The court erred in refusing to give to the jury defendant's tendered instructions Nos. 16 and 22."* These two tendered instructions relate to fraud. The shorter, No. 22, reads as follows: "You are instructed that the basis of the claim made by plaintiffs in this case is fraud. In order to establish fraud plaintiffs must clearly establish not only that material errors existed in the representations made to the purchasers of these notes, but that the defendant either knew these representations to be false or that it stated these things to be facts without knowing whether they were true or false and without taking reasonable steps to find out whether they were true or false." We believe both instructions fairly state the law in its application to the facts in this case and should have been given. Counsel for Hall do not discuss this point, on the theory that the instructions are barred by the "law of the case" as laid down in *Bankers Trust Co. v. International Trust Co., supra.* Counsel for the Bankers Company argue that these instructions were not even tendered in the former trial and that we said nothing in our opinion in the former case on this point. This latter contention appears to be correct. Accordingly the point must be taken as having been confessed and a new trial must be granted because of the refusal of the court to give the tendered instructions.

■ *Point 3. "The court erred in excluding the evidence of the witness White relative to the adequacy of the*

*security.*" The testimony of White discloses that he was personally familiar with both the ranches here in question in the years 1920 and 1921. His testimony in regard to the adequacy of the security for the loan was offered by counsel for the Bankers Trust Company, not only because of his personal familiarity with the properties as they existed at the time the loan was made and at the time of the sale of the notes to the investors, but because he was an outstanding expert on the type of values involved in this case. His testimony on this matter was excluded on the theory that it was not responsive as to the number of acres in each ranch that were irrigated or non-irrigated. A great deal of the evidence given by Hall went to the point of proving that the statements in regard to the amount of acreage of irrigated land was incorrect. The evidence at the trial as to what the condition on the ranches was some twenty years earlier, tended to show that there was a third type of land on the ranches which, using a strictly accurate terminology, might not fall under the category of either irrigated or nonirrigated land. This consisted of land that had not yet been broken and put under cultivation, but which could be irrigated by virtue of being under a ditch already constructed. It is evident that this land had a value higher than that of dry or nonirrigated land, even if it might not have as high a value as land under the ditch that had already been irrigated. Under these circumstances, considering the fact that both sides were attempting to reconstruct the conditions as they existed some twenty years earlier—before the advent of the depression years during which had occurred the abandonment of farming and stock operations—we believe the testimony of White on the value of the security was pertinent. As we said in *Bankers Trust Co. v. International Trust Co., supra,* "The very basis of plaintiff's complaint on this score is that defendant misrepresented the *actual value* of the mortgage security * * *." We believe it was prejudicial error to exclude this testimony.

■ *Point 4. "The court erred in refusing to instruct the jury that the remedy of rescission was not available unless it was possible to restore the status quo substantially."* The trial court refused to give defendant's tendered instruction No. 2, nor did it give the jury any instruction whatever upon the legal necessity of restoring the status quo in actions for, and suits on, rescission. We have ruled many times on this necessity, and the cases in this jurisdiction seem to be unanimous on the point. *Laramie Poudre Irrigation Co. v. Redfeather Lakes Resort, Inc.,* 94 Colo. 479, 31 P. (2d) 917; *Gertner v. Limon National Bank,* 82 Colo. 13, 257 Pac. 247; *Central Life Assurance Soc. v. Mulford,* 45 Colo. 240, 244, 100 Pac. 423; *Auld v. Travis,* 5 Colo. App. 535, 39 Pac. 357; *Wheeler v. McNeil,* 101 Fed. 685, 688; *Cherry v. Cox,* 45 S. W. 122; and *Record v. Rochester Trust Co.,* 89 N. H. 1, 192 Atl. 177, 110 A. L. R. 1218. Counsel for Hall do not argue this point, on the theory that it is disposed of by the law of the case in *Bankers Trust Co. v. International Trust Co., supra.* Counsel for Bankers Trust Company argue that our opinion in the former case makes no specific reference to the matter of status quo, but in that case we said in conclusion: "We find no prejudicial error therein affecting the rights of defendant, nor did such result attain from the refusal of the instructions tendered by it." It is admitted that the same instruction was tendered and refused in the former trial, and that our ruling in *Bankers Trust Co. v. International Trust Co., supra,* would have been binding upon the trial judge in the case at bar had the testimony been the same. It appears, however, that in the former trial there was little evidence except photographs taken in the early years and in the later years. In the case at bar there is the uncontradicted testimony of defendant's witness Gooding, and also that of its witness White, on the question of whether the status quo could be substantially restored. We are therefore of the opinion that this was a question for the jury to decide in the case at bar, and

that there was error in the refusal of the court to submit it to that body under proper instructions.

■ *Point 5. "The court erred in refusing to permit the amendments to its answer which defendant requested at the retrial of this cause."* In the former trial plaintiff's witnesses, Backus and Styer, testified that they purchased their notes without reading the circular; certain other noteholders were then dead. It appeared therefore from evidence introduced by plaintiff that the allegation in subdivision 7 of the first defense in the answer: that this prospectus was brought to the attention of all noteholders, was an error, and an amendment to conform to the proof in the former trial was requested at the outset of the retrial. There could have been no surprise, because this fact had been developed by plaintiff's own evidence at the former trial. Plaintiff objected to the amendment and the court sustained the objection. We believe this amendment should have been allowed, and also, for the same reason, an amendment should have been permitted concerning the issuance of interim certificates.

■ *Point 6. "There was no evidence of a fiduciary relationship existing at the time of the sale of the notes and the court erred, therefore, in giving instructions Nos. 7 and 8."* We believe that those instructions were faulty, for the reason that they contained no reference to the time when the fiduciary relationship between the Bankers Trust Company and the plaintiff noteholders arose. Such relationship clearly did not exist at the time the notes were sold. It arose when Bankers Trust Company undertook, on behalf of the assenting noteholders, to foreclose the ranches and take over the property. Counsel for Hall made no answer to this point, on the theory that the matter is foreclosed by our opinion in *Bankers Trust Co. v. International Trust Co., supra,* but this point does not appear to be mentioned in our former opinion, and the case of *Midwest Mutual v. Heald,* 106 Colo. 552, 108 P. (2d) 535, which we believe is controlling on this point,

was not cited. We are of the opinion, therefore, that in a retrial of this cause the principles of this case should be noted in respect to the time when the fiduciary relationship commenced.

■ *Point 9. "The Evidence of plaintiff himself established that the following causes of action were barred by laches and limitations, viz., 4th cause of action, Mary Rice Chandler; 6th cause of action, H. A. Rose; 16th cause of action, Helen M. Horton; 20th cause of action, Henry G. Frankel."* This is another phase of the argument which is not discussed by counsel for Hall on the theory that it is covered by the law of the case in *Bankers Trust Co. v. International Trust Co., supra.* Counsel for Bankers Trust Company argue that this is not a matter covered by the former opinion, because all that was decided there was that under the former testimony it had not been established that each and every cause of action was barred by limitations. In the instant case the testimony of the individual defendants was different from that given in the former trial, and, with respect to the four causes of action above mentioned, the parties themselves frankly testified that they were put on notice many years prior to the limitation period. For that reason we are of the opinion that said four causes of action are barred by laches and limitations.

Judgment is accordingly reversed and the cause remanded for a new trial, in which the proceedings shall be consistent with the views expressed herein.

Mr. Chief Justice Burke and Mr. Justice Hays concur.

*On petition for rehearing.*

Case transferred to banc. Upon consideration en banc Mr. Justice Hilliard votes for rehearing and dissents to original opinion. Mr. Justice Stone not participating.

Petition for rehearing denied.