No. 15,566.

Hall, Executor *v.* Swan et al.
(188 P. [2d] 437)

Decided December 8, 1947.

Mr. FRED S. CALDWELL, Mr. FREDERICK SASS, Mr. BENJAMIN GRIFFITH, for plaintiff in error.

Mr. WILLIAM V. HODGES, Mr. HAROLD D. ROBERTS, Mr. ROBERT E. MORE, for defendants in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is an action whereby plaintiff seeks personal judgments against the directors of the Bankers Trust Company under our Colorado statutes pertaining to liability of corporate directors. In a trial to the court judgment was in favor of the defendant directors, and plaintiff, coming here as plaintiff in error, seeks reversal.

The transactions from which this case arose are the same as those upon which the case of *Bankers Trust Co. v. Hall,* 116 Colo. 566, 183 P. (2d) 986, is grounded. For that reason the two cases were orally argued at the same time. The Bankers Trust Company case was an action at law for rescission. Both parties agree that the instant case is in the nature of a proceeding in equity. Both cases arose out of the sale, in January 1921, by Bankers Trust Company of farm loan notes of the Park Range Live Stock Company to certain individual investors, who later assigned their interests to the same plaintiff in both actions. The necessary facts pertaining to *Bankers Trust Co. v. Hall, supra,* appear in the opinion in that case and we here refer to it as giving additional background to the proceedings in the instant case. A chronological statement of the pertinent facts in the present action is now in order.

In 1923, and at a time long before any of the matters

involved in this case had become known to any of the parties herein, the Bankers Trust Company notified all of its customers, including the plaintiff, that it was winding up its affairs and going out of business. Its board of directors, acting pursuant to action previously taken by the stockholders, directed that the corporation be placed in voluntary liquidation in accordance with Colorado law under which it was incorporated. The directors appointed a liquidating committee from their board, naming Swan as the liquidating agent, and authorized the committee to take all steps necessary for the expeditious liquidation of the affairs of the company; accordingly, the company ceased thenceforward to act as a commercial bank of deposit or to deal with the public in handling new business of any sort. As a further step, the remaining assets were converted into cash from which five liquidating dividends were paid to the stockholders, the first on September 1, 1923, and the last in July 1925. These liquidating dividends, or distributions, totaled $1,000,000, which amount was the capital of the bank. These payments therefore returned to the stockholders their original capital investment. There remained a surplus of $250,000 in the hands of the directors. The assets back of this surplus were liquidated more slowly over a period of years. At the time of the completion of the return of the $1,000,000 capital to the stockholders, there was approximately $7,000 of known claims against the company for which provision was to be made out of the surplus. This $7,000 of claims was subsequently paid and the annual balance sheets of the corporation filed with the secretary of state for the years 1926 to 1932, inclusive, copies of which were introduced in evidence by plaintiff, disclose a gradual decline of this surplus fund until on December 31, 1932, the company had on hand but $95.73. There was evidence to the effect that this shrinkage in value was caused by expenses of the company's operations and the financial panic which commenced in the fall of 1929. No charge of mismanagement

was made either in the complaint or by the testimony. The corporation had been reduced to a mere shell or paper corporation, and the evidence shows that it continued thus until the expiration of its charter in 1940. In the meantime an agent and officer of the company wrote a letter dated October 16, 1933, addressed to plaintiff and to the other noteholders who were his assignors, stating that the original circular describing the ranch loan was erroneous in certain respects. This letter was used in fixing the date when plaintiff had notice in the Bankers Trust Company case, where the court instructed the jury as follows: "Gentlemen of the Jury, with the *consent of counsel,* the court is making the following statement: Counsel for the plaintiffs has stated that the letter of October 16, 1933, was such notice to the noteholders of fraud in the original circular that it put them on notice thereof, and that the noteholders in this case were all put on such notice on October 16, 1933."

February 11, 1935, plaintiff filed suit against the Bankers Trust Company. In *Bankers Trust Co. v. Hall, supra,* the course of that litigation is described, from which it will be noted that plaintiff did not succeed in obtaining its first judgment against the Bankers Trust Company until July 25, 1938. Execution was returned unsatisfied October 5, 1938. February 16, 1939, plaintiff filed his original complaint in the instant case, in which he alleged that:

"On or about November 1, 1934, said Bankers Trust Company contracted an indebtedness with plaintiff and eighteen other persons * * *. Said indebtedness so contracted by Bankers Trust Company with plaintiff and his said eighteen assignors was for money had and received, by virtue of a contract implied by law in manner and form as follows:

"On or about January 2, A.D. 1921, said Bankers Trust Company by numerous false and fraudulent statements and representations then and there made by it to plaintiff and his said eighteen assignors, caused plaintiff and

his said eighteen assignors to pay to it certain large sums of money for certain first mortgage notes made and issued by Park Range Live Stock Company, a corporation, which said fraud so committed against plaintiff and his said eighteen assignors, was not discovered by him and them, or any of them, until on or about said first day of November, A.D. 1934. Shortly thereafter plaintiff and his said eighteen assignors elected to and did rescind their several purchases of said mortgage notes, and did then and there demand of and from said Bankers Trust Company restitution of the several sums of money which they had paid to it as and for the purchase price of said notes; but their several demands for restitution and the return of their money were refused by said Bankers Trust Company."

Plaintiff's two specifications of error are the following:

"I. The judgment of the trial court is against the law as set forth in Sections 34, 62 and 68 of Chapter 41 of the 1935 Colorado Statutes Annotated, which said statutory provisions are mandatory in requiring that the property of a corporation must first be appropriated to the payment and satisfaction of the claims of holders of 'liabilities' against the company before any portion of it can be distributed to the stockholders.

"II. In Dick v. Petersen, 90 Colo. 83, 87, this Court said: 'The effect of these two sections (Secs. 62 and 68, Ch. 41, 1935 C.S.A.) is to save to persons to whom the corporation owes "debts" contracted, the right to enforce payment thereof, and to persons in whose favor the corporation has incurred "liabilities" the right to receive satisfaction therefor. On the other hand, if dissolution of this corporation was not effected, the claim of the plaintiff, *which was reduced to judgment,* the validity of which is not challenged, *may be satisfied out of the assets of the corporation which the directors wrongfully converted to their own use.'* The judgment of the trial court in the instant case is contrary to that decision of

this Court and is against the mandatory provision of the statute therein referred to."

The pertinent sections of Colorado law mentioned in the specifications are:

"§34. If the directors, trustees or other officers or agents of any corporation shall declare and pay any dividend when such corporation is insolvent, or any dividend the payment of which would render it insolvent, or would diminish the amount of its capital stock, all directors, trustees, agents or officers assenting thereto shall be jointly and severally liable for *all* debts of such corporation *then existing,* and for all that *shall thereafter be contracted while the capital remains so diminished.*" (Italics supplied.)

"§62. Upon dissolution by expiration of its charter or otherwise of any corporation now existing or which may hereafter be formed, unless some other person or persons be appointed by some court of competent jurisdiction, the board of directors or trustees of such corporation or the managers of the corporate affairs, by whatever name known, acting last before the time of its dissolution, and the survivors of them, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the same; to sue for and collect the debts and moneys due to the corporation, or to compound and settle any claims thereof, as they may deem best; to have, hold, reserve, sell and dispose of property, real and personal, of any such corporation dissolved; to adjust and pay all the debts of the corporation dissolved; to divide the residue of the moneys and property belonging to the corporation dissolved after payment of debts and the necessary and reasonable expenses, among the stockholders holding stock in such corporation, in proportion to the amount paid upon stock of each stockholder. All such trustees shall be jointly and severally liable to the creditors and stockholders of such corporation dissolved, to the extent of the property and effects which shall

come into their hands or possession of any of them, for a proper and faithful discharge of the duties of said trust and disposal of said property and effects. [G.S., §341; G.L., §307; R.S. '08, §894; C.L., §2295.]"

"§68. The dissolution for any cause whatever, of corporations created as aforesaid, shall not take away or impair any remedy given against such corporation, its stockholders, or officers, for any liabilities incurred previous to its dissolution. [G.S., §270; G.L., §223; R.S. '08, §899; C.L., §2300.]"

Plaintiff relies particularly on three Colorado cases:

*Nix v. Miller*, 26 Colo. 203, 57 Pac. 1084, does not involve a dissolved corporation or one in process of liquidation. There, the directors misapplied corporate assets and used them in the payment of their personal debts. This process continued until the corporation became insolvent. We held that any creditor had a right to hold the directors personally liable and, this being so, that a judgment creditor was a proper plaintiff. We approved the trust-fund theory in following the corporate funds.

In *Fishel v. Goddard*, 30 Colo. 147, 69 Pac. 607, in an action in the nature of a creditor's bill, a director of a corporation purchased property belonging to the corporation at less than its true value. He was found recreant to his trust and held liable to the creditors of the corporation for *existing debts* to the amount of the profits measured by the difference between the actual value of the property purchased and the sum paid therefor.

*Dick v. Petersen*, 90 Colo. 83, 6 P. (2d) 923, is most strongly relied upon by plaintiff, a quotation from the opinion being the second specification of points. We do not believe it is controlling. There, plaintiff was a known, existing contract creditor; in the instant case, plaintiff was not a known, existing contract creditor. There, all assets were distributed without setting aside any fund for creditors; in the instant case, ample funds were set aside for all known, existing contract creditors.

There, suit was brought against Dick as both stockholder and director, and brought almost immediately after the last distribution was made to the stockholders; the instant case involves a suit against directors, but not stockholders, and is brought against them over eleven years after the distribution of capital to stockholders was made and over five years after the plaintiff was put on notice as to the possibility of his having a claim against both the directors and the trust company for the alleged fraud in the sale of the ranch mortgage notes.

In *Dick v. Petersen, supra,* we quoted with approval a portion of a paragraph from *Montgomery v. Whitehead,* 40 Colo. 320, 327, 90 Pac. 509, 11 L.R.A. (N.S.) 230. The complete paragraph reads as follows: "Appellants urge that they had the right to declare a dividend as against subsequent creditors, and cite *Graham v. Railroad Co.,* 102 U.S. 148; *Hollins v. Brierfield Co.,* 150 U.S. 371, and other authorities. We quite agree with the rule contended for by appellants. It has heretofore been adopted as the rule of this court. *Nix v. Miller,* 26 Colo. 203; *Jones v. Bank of Leadville,* 10 Colo. 464; *Breene v. Merchants Bank,* 11 Colo. 97. But the rule is not applicable to the case in hand. Montgomery is held to be an existing creditor at the time of the distribution of the assets, and all his rights inured by the garnishment judgment to the plaintiffs in this case. It has always been the law that the property of a corporation must first be appropriated to the debts of the company before any portion of it can be distributed to the stockholders of the company. *Fogg v. Blair,* 133 U.S. 534; *Hollins v. Brierfield Co.,* 150 U.S. 371; *Buck v. Ross,* 68 Conn. 29; 57 Am. St. 60, and note the same, p. 63. See *Fishel v. Goddard,* 30 Colo. 147, disapproving *dicta* in *West v. Produce Co.,* 6 Colo. App. 467."

While we held in the Dick-Petersen case that the rule relating to distribution of corporate assets without making provision for *existing* creditors applied, we are inclined to the opinion, if it were necessary for us to pass

on the question, that the facts in the instant case come under the rule relating to *subsequent* creditors. We do not so rule because we believe that plaintiff is barred by certain statutes of limitation which have been pleaded by defendants.

Defendants have pleaded the Colorado one year statute of limitations, section 9, chapter 102, '35 C.S.A., which applies to "all actions and suits, for any penalty or forfeiture of any penal statute brought by this state * * *," as especially applicable to section 34, supra, of our Corporation Code. The title of that section reads, "Penalty for declaring dividend when insolvent." Counsel for plaintiff point out that the title of the section is not a part of .the act itself, and devote a major portion of the reply brief to the theory that the penalty statute does not apply to the facts in the instant case. We reserve ruling on this point because, regardless of the one year penalty statute, we believe this action is barred by the three year statute, section 13, chapter 102, '35 C.S.A., which reads as follows: "Bills for relief, on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards." If it be considered that this three-year statute is inapplicable because of the existence of a fiduciary relationship between the plaintiff and defendants, then we are of the opinion that section 14, chapter 102, '35 C.S.A., operates as a bar to this action. It reads: "Bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after." See, *Morgan v. King*, 27 Colo. 539, 558, 559, 63 Pac. 416, where we discuss the interrelation of these three-year and five-year statutes of limitation.

Counsel argue at length that plaintiff is not barred by either of these statutes of limitation, for the reason that it was first necessary to reduce to judgment plaintiff's claim against the corporation before proceeding against

the directors. On this point principal reliance is placed on *Hoehn v. Crews* (9th Cir.) 144 F. (2d) 665, in which certiorari was denied as to the question here involved by the United States Supreme Court under the title *Garber v. Crews*, 323 U.S. 701, 65 Sup. Ct. 132, 89 L. Ed. 566; *Garber v. Crews*, 324 U.S. 200, 65 Sup. Ct. 600, 89 L. Ed. 870. That was a case brought by the creditors of an insolvent bank against the stockholders of the bank to enforce the statutory liability of the latter as bank stockholders and also against the directors for failure to comply with a pertinent statute. The opinion in the case indicates that the directors were held not liable under the statute in question. Liability against the stockholders was enforced, and as to them it was held that the limitation statute did not begin to run until the primary claim against the bank had been reduced to judgment. This was on the theory that the liability of the stockholders in such a case was secondary, while that of the bank was primary. It seems to us that a clear inference to be drawn from that opinion is that the statutory liability of directors is primary, while that of stockholders is secondary. We have already noted that the court relieved the directors of liability while holding the stockholders liable. It is also to be observed that the two principal cases cited and discussed in the opinion pertain solely to the liability of stockholders and do not involve the liability of directors (*Swan Land & Cattle Co. v. Frank*, 148 U.S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577, and *Hollins v. Brierfield Coal & Iron Co.*, 150 U.S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113).

In the instant case any steps to enforce liability against the directors could have been taken at the same time proceedings were instituted against the corporation. We believe the record in this case shows that not only *could* they have been taken, but that they *should* have been taken at the time. It appears from the plaintiff's own evidence that the Bankers Trust Company by its annual reports filed with the secretary of state had pub-

lished to all the world that, beginning with the year 1933, its sole assets and surplus were $95.73 in cash. Counsel for plaintiff excuse the failure to have execution issue against the corporation and a return of nulla bona made after the second judgment in 1941 on the ground that it would have been a "vain and useless thing." Such would appear to be the case from the very beginning of this litigation. Not having been referred to any cases, nor having found any that would indicate that the directors' liability under the pertinent statutes was not primary rather than secondary and hence subject to the running of the various statutes of limitations as in the case of any other primary obligor, we are of the opinion that the judgment of the trial court should be, and it hereby is, affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HAYS concur.