MAGNA ASSOCIATES, a Limited Partnership by Ludwig Bravmann, Lou Green and Herbert Wasserman, Limited Partners, and Ludwig Bravmann, Lou Green and Herbert Wasserman, Individually and as Limited Partners of Magna Associates, a Limited Partnership Suing on Behalf of Themselves and All Others Similarly Situated

v.

Howard H. TORGROVE, Individually and as General Partner of Magna Associates, a Limited Partnership.

No. 84–K–155.

United States District Court, D. Colorado.

May 23, 1984.

Dale Tooley, Phillip D. Barber, Welborn, Dufford, Brown & Tooley, Denver, Colo., Jeffrey T. Golenbeok, David J. Eiseman, Golenbeok, Eiseman, Assor & Bell, New York City, for plaintiffs.

A. Craig Fleishman, Carolyn Gruber, Atler, Zall & Haligman, Englewood, Colo., Peter N. Wang, Friedman & Gass, New York City, for defendant.

## ORDER GRANTING MOTION TO DISMISS

KANE, District Judge.

Before me in this diversity case is defendant's motion to dismiss. Torgrove argues convincingly that some or all of the claims for relief are barred by the appropriate statutes of limitations. For the reasons set out below, I agree and order the complaint dismissed.

Magna, a limited partnership organized under Colorado law, was formed in 1968 to

acquire a building located in Denver, Colorado known as Brooks Towers. At present, there are a total of 53 limited partners, most of whom live in New York City. Torgrove and David Warshaw, an attorney, became general partners to the venture. Torgrove also acted as supervisory managing agent, in which capacity he received $250.00 per month in exchange for what he admits were perfunctory and limited duties.

In the late sixties and early seventies, the master tenant and its successor developed financial problems which prevented them from fulfilling their obligations to Magna. Rather than fight a protracted and potentially catastrophic battle in bankruptcy court, Magna chose to reassign the lease to a newly-formed and wholly-owned corporation, Albion. From June, 1974, to July, 1975, Torgrove singlehandedly managed the building, at which time he

> persuaded a local management firm to aid [him] in the management of the Property at a management fee considerably below market based on [his] continued management involvement.

Torgrove Affidavit at 4.

Torgrove's efforts were successful. He turned an insolvent property into one which is worth, by his estimate, $21,000,000. Torgrove and some of the limited partners had lengthy discussions from 1974 to 1976 in an effort to negotiate an appropriate and fair contract for his services. The result was a Management Agreement, signed by Torgrove on October 21, 1977, which is the focus of this litigation. As the complaint puts it:

> The Management Agreement provides that defendant Torgrove shall receive as compensation for managing the building a "Management Fee" equal to a minimum of 4% of the "Gross Rental Receipts", as defined, plus in certain circumstances, an additional 1% of Gross Rental Receipts; and as a "Supplemental Management Fee", 10% of Brooks Towers' positive cash flow for each calendar year after 1975, *plus* 10% of the first $1 million of sales or refinancing proceeds

net of expenses and certain other specified deductions, 20% of all such additional proceeds up to $2 million, and 25% of all such proceeds in excess of $2 million.

Complaint at ¶ 20.

David Warshaw, Torgrove's co-general partner, and Warshaw's law firm, represented and negotiated the management agreement on behalf of the limited partners. As part of that representation, Warshaw advised the limited partners by letter of the salient terms of the management agreement and solicited consent forms approving it. 98% of the limited partners, including plaintiffs Lou Green and Ludwig Bravmann, signed the consent forms approving the management agreement.

Plaintiffs originally filed this complaint in the Supreme Court in New York City. Torgrove removed the case to federal district court and then convinced Judge Duffy of that court to transfer the case to me on December 7, 1983.

The complaint makes four claims for relief, sounding in fraud, breach of fiduciary obligation and, if I am to believe plaintiffs, contract. The critical allegations in the complaint are that:

21. The Management Agreement is a device by means of which defendant Torgrove sought to effect a *de facto* amendment of the Partnership Agreement without obtaining the requisite consent of all the limited partners in order to accomplish the following principal objectives:

> To enable defendant Torgrove to pay himself as a so-called "Management Fee" a salary, in excess of that permitted under the Partnership, for services which he was obligated to and did in fact perform as a general partner;
>
> To divert to defendant Torgrove a substantial share of the Partnership profits, as defined in the Partnership Agreement, that belong to and are required to be allocated and paid to the limited partners *pro tanto* in accordance with the percentage allocations in the Partnership Agreement.

22. In executing the Management Agreement, defendant Torgrove commit-

ted a fraud upon the Partnership and the limited partners, violated the terms of the Partnership Agreement and applicable State law, engaged in impermissible self-dealing, breached his fiduciary duties of good faith, fair dealing and complete candor owed to the Partnership and its limited partners, and placed himself in a position of irreconcilable conflict with the interest of Magna and its limited partners.

28. Upon information and belief, from the time that the operating lease was terminated until the execution of the Management Agreement on October 21, 1977, defendant Torgrove:

(i) failed and refused to permit the Partnership to obtain the services of a qualified independent managing agent;

(ii) failed and refused to make a good faith effort to obtain such services;

(iii) falsely and fraudulently represented to the limited partners that he had made good faith efforts to obtain such services;

(iv) falsely and fraudulently represented to the limited partners that he was uniquely well-qualified to provide such service; and

(v) falsely and fraudulently represented to the limited partners that there were no feasible alternative means of obtaining such services.

Complaint at paragraphs 21, 22, 28. Plaintiffs also allege that Torgrove fraudulently obtained the consents of 1977 from the limited partners by using his position as general partner to keep the limited partners from "fairly assessing alternative methods of obtaining the requisite management services...." Complaint at paragraphs 52 and 29.

Defendant's motion to dismiss is predicated upon the five and three year statutes of limitation pertinent to breaches of fiduciary obligation and fraud. See Colo.Rev. Stat. §§ 13–80–114 and 13–80–109 (1973). Torgrove argues that the statutes began to run on the date of the execution of the management agreement, October 21, 1977, thereby cutting off any claims for breach of fiduciary obligation in October, 1982. He also argues that any claims based upon a fraudulently obtained consent were cut off in October, 1980, three years after Torgrove signed the management agreement.

Instead of responding directly to the motion to dismiss, plaintiffs have adopted a machine-gun like approach. First, they say that Torgrove breached the underlying partnership agreement when he signed the management agreement, thus calling into play a six-year statute of limitations. See Colo.Rev.Stat. § 13–80–110. Or they say that Torgrove's tortious conduct under the management agreement continued from and after the execution of the agreement. Alternatively, they say that § 13–80–114 has never been construed to apply to breaches of a partnership agreement. Finally, plaintiffs admit that claims for fraud are subject to a three year statute of limitation, but assert that

the limitation period begins to run only when the aggrieved party discovers or should by the exercise of reasonable diligence have discovered the facts constituting the fraud.

Brief at 7.

### Discussion

In arguing that they have an action in contract as well as one for breach of a fiduciary duty, plaintiffs claim that the partnership agreement forbids Torgrove from receiving any compensation in excess of the $250 per month specified at paragraph 11. Since paragraph 11 purports to forbid any "salary or drawings for services rendered on behalf of the partnership ..." plaintiffs think that Torgrove affected an illegal amendment of the partnership agreement by virtue of the management agreement. My reading of the partnership agreement does not persuade me that Torgrove's actions were a violation of its contractual terms. Paragraph 11 only forbids compensation in a capacity as a *partner*, not as a managing agent. Elsewhere, the partnership agreement specifically authorizes the general partners to hire a person or a firm for the operation and manage-

ment of the property. See paragraph 14(b)(iii). It also permits, at paragraph 14(d), the partnership to hire one of the general partners to render or perform any service.

■ Colorado law requires me to look only to the nature of the right sued upon to determine the applicable statute of limitations. Neither the form of the action nor the form of relief demanded are pertinent. *Association of Owners, Satellite Apartment, Inc. v. Otte,* 38 Colo.App. 12, 550 P.2d 894 (1976). I acknowledge that there are instances where limited partners may have a cause of action sounding in contract for an agent's violation of his duty of loyalty. Comment "b" to § 403 of the *Restatement (Second) Agency* provides:

> The principal has a cause of action either for a breach of contract or for a tort as a remedy for damage caused by the violation of any duty of loyalty on the part of the agent.

This is not such an instance. *Compare Western Electric Company v. Brenner,* 41 N.Y.2d 291, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977).

■ The gravamen of the instant complaint is that a general partner violated his duty of loyalty to the limited partners by taking on the role of managing agent. In such a position, Torgrove would have a conflict of interest between his own position and that of the limited partners. Torgrove's malfeasance, assuming the truth of the complaint, arises not from a breach of the partnership agreement but from a defalcation of his duties and obligations as a partner. Those are not contractual obligations. They are requirements which the law imposes upon fiduciaries. I conclude that the plaintiffs have no action arising from a breach of contract.

■ I also reject plaintiffs' argument that the five year trust statute of limitations is inapplicable because Torgrove's tortious conduct has continued since the time of the execution of the management agreement. I agree with plaintiffs that there are instances of continuing breaches of

contract. For example, where a debt is payable in installments, the statute of limitations runs against each installment from the day it becomes due. *See Bishop v. State, Division of Retirement,* 413 So.2d 776 (Fla.App. 1st 1982). As one persuasive comment notes, there are four possible results depending upon the particular case:

> (1) the period limiting the actions to recover for *all* harm may commence upon the occurrence of the first invasion of the plaintiff's rights; (2) each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with its occurrence; (3) the period for all harm may not commence until the defendant ceases his wrongful conduct; and (4) the period for all harm may be postponed until there is a manifestation of compensable harm.

Note, *Developments in the Law: Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1205 (1950).

■ In this case there is no question that Torgrove has received and continues to receive a percentage of the gross profits of the building. Even so, this is an instance where "the completed part of [Torgrove's] conduct ..." has caused all the harm that has resulted to the limited partners. 63 Harv.L.Rev. at 1205. By "completed part of conduct" I obviously refer to the signing of the management agreement, for it is from that act that plaintiffs' damages flow. Thus,

> the statutory period properly commences immediately without regard to future conduct, for the certainty of harm is sufficient to allow recovery for all damage and the impact generally assures both knowledge of the conduct and incentive to sue.

63 Harv.L.Rev. at 1205. Assuming the truth of the complaint's allegations, Torgrove breached his duty of fair dealing, his duty of good faith and complete candor on the date he signed the management agreement. As of that date, the potential for future harm was not only clear, it was certain. I therefore conclude that there

has been no continuing breach of Torgrove's duty as a fiduciary.

▇ Plaintiffs argue that § 18–80–114 has never been construed to apply to breaches of a partnership agreement. This argument ignores my previous interpretations of *Hall v. Swan,* 117 Colo. 349, 188 P.2d 437 (1947). See *Laymon v. McComb,* 524 F.Supp. 1091 (D.Colo.1981); *Morgan v. Dain Bosworth,* 545 F.Supp. 953 (D.Colo. 1982).

▇ Plaintiffs correctly state the rule that the statute of limitations will run only when the aggrieved party discovers or should have discovered the fraud. In Colorado, full possession of the means of detecting the fraud is equivalent to knowledge of it. *Parsons v. Shackleford,* 117 Colo. 545, 188 P.2d 587 (1948). Each limited partner has had a copy of the management agreement since at least November, 1977. No one has suggested to me, by affidavit or otherwise, that he or she was unaware of the terms of the agreement or had been mislead in some way. Plaintiffs have referred me to a recent Tenth Circuit case which counsels that if the statute of limitations depends on disputed facts, then summary judgment is inappropriate. *Wolf v. Preferred Risk Life Insurance Co.,* 728 F.2d 1304 (10th Cir.1984). The instant case does not appear to turn on such disputed facts. Nonetheless, given the gravity of plaintiffs' allegations, I will permit them ten days within which to refile their complaint so as to allege facts which would toll the running of the statute of limitations.

### *Conclusion*

I dismiss the complaint as to all claims relating to breach of fiduciary obligation; as to all claims purportedly sounding in contract; and as to all claims sounding in fraud. Plaintiffs shall have ten days within which to refile their complaint to allege facts which would toll the statute of limitations. In the alternative or in conjunction therewith, plaintiffs should also refile any equitable remedies for an accounting or for a dissolution and winding up they wish to pursue in this court.