No. 18,412.

WILLIAM HOY ASKINS *v.* B. K. EASTERLING.
(347 P. [2d] 126)

Decided November 30, 1959.

Messrs. TRUITT & ELSNER, for plaintiff in error.

Mr. VINCENT CRISTIANO, Mr. ROBERT BUGDANOWITZ, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFF in error was the defendant below in an action there instituted by the defendant in error for the purpose of declaring a resulting or constructive trust in certain real estate. The parties will be referred to as they appeared in the trial court.

This is a controversy between plaintiff stepfather and defendant stepson as to ownership of a home in which the plaintiff seeks to establish an equitable interest and to impose a trust. Defendant is the son of Ida F. Easterling by a former marriage and claims under a deed from his deceased mother. At the time of the trial he was 41 years of age. The plaintiff, the second husband

of Ida F. Easterling, married the latter on April 17, 1945, and lived with her from that time until her death on November 5, 1956. The defendant lived in the home of the parties from the time of their marriage until he himself contracted a marriage in 1952. Plaintiff and his wife lived in rented houses until 1948, at which time Mrs. Easterling proposed that they purchase a home. She had some money inherited from her previous husband which she offered to use as a down payment. She agreed that she would make the down payment if the plaintiff would make the payments on the mortgage and pay for improvements. However, while plaintiff was out of town on business, she surreptiously took title in her name only, and when he returned advised him that she had taken title in joint tenancy.

The evidence discloses that plaintiff made the payments regularly and also paid for substantial improvements on the property and contributed a total in excess of $7,000.00. The property in question was a double or terrace located at 3240 Osceola Street in Denver, Colorado. One-half of it was rented and presumably the income was received by plaintiff and constituted a contribution and became a part of the $7,000.00, plus, which he invested in the property.

On April 20, 1950, the wife executed a Warranty Deed to herself and the defendant in joint tenancy. This deed was not discovered by either the plaintiff or defendant until November 16, 1956, following the death of the grantor. However, it had been recorded and placed by the decedent in a safety deposit box which was jointly held by herself and her son.

At the trial the plaintiff testified as to the oral agreement which he had with the deceased and as to his performance of the agreement, stating that he was unaware of the joint tenancy deed from deceased to herself and son until after her death. He further testified that he signed a note in the amount of $5,000.00 at the time of the purchase of the property (the deceased wife had

paid $6,500.00 toward the total price of $11,500.00). The $5,000.00 note was signed in connection with the mortgage which was given to the seller.

This note was not produced at the trial, the explanation being that it was in California and could not be produced. No particular showing was made to establish that formal steps were taken to obtain the note. A secondary document was, however, introduced to establish that the plaintiff had signed the note. This was an extension agreement dated April 6, 1953, which recited this fact.

Other testimony at the trial was that of various third persons as to declarations of the deceased relative to the property having been purchased as a home for the plaintiff and herself so that if and when one of them predeceased the other he or she would have a place to live.

Other testimony was for the purpose of showing that the defendant made no cash contribution to the purchase, upkeep or improvements.

On cross-examination, defendant admitted that he had no knowledge of the joint tenancy deed to him and decedent until he discovered it when the safety deposit box was opened. Although defendant had a key to this box, he did not use it and it was in the possession of the decedent.

In his complaint plaintiff asserted sole ownership and demanded a decree ordering the defendant to convey to him. In the alternative he prayed for a decree confirming title in him of an undivided one-half interest in the property and asked the court to decree a trust as to a one-half interest for his benefit. The answer denied the contract, alleged that defendant was the sole owner of the property and prayed for dismissal of the complaint. In his counterclaim, defendant alleged that he was entitled to possession of the premises and prayed for an order evicting the plaintiff. The trial court found the facts generally in favor of the plaintiff, but held that the agreement between the plaintiff and decedent was

that the property was to have been purchased in both of their names rather than as joint tenants. The conclusion was that the deed was void insofar as it attempted to deprive the plaintiff of his one-half interest. The court further determined the plaintiff to be the owner of a one-half interest in the property and the defendant to be an owner of a one-half interest. At the same time, the court refused to recognize a constructive trust of the entire property for plaintiff's benefit.

On this review the defendant seeks reversal and relies on the following:

1. That the trial court erred in allowing third persons to testify to declarations of the decedent from which it could be inferred that the property was purchased for herself and the plaintiff.

2. Error in receiving secondary evidence as to the execution by plaintiff of the promissory note.

3. Error in allowing the plaintiff to testify with respect to his agreement with the decedent.

4. Failure of the court to dismiss the complaint for insufficiency of allegations and insufficiency of competent evidence.

Although other errors are specified, they are repetitious and the above sufficiently depicts defendant's position.

Plaintiff seeks reversal contending that the trial court erred in failing to conclude that defendant held the entire property in trust for the use of plaintiff.

*First: Admissibility of the Testimony of Third Persons.*

■ Plaintiff argues that the declarations of the decedent to friends to the effect that the property had been purchased as a home for herself and the plaintiff were properly admissible notwithstanding their hearsay character for the reason that they were declarations against interest. He cites and relies upon 20 *Am. Jur., Evidence,* Sections 556, 604, and 609. A summary of the rule there set forth is that statements of a former owner are admissible as an exception to the hearsay rule against a

successor in interest which declarations deal with the contemporary interest of the former owner in the property. The author of the text points out that because of the privity between the former owner and the successor litigant these statements are binding upon the latter and serve to impeach his present claim. In 4 Wigmore (3rd Ed.) 134, Sec. 1080, it is said:

"The admissions of one who is privy in title stand upon the same footing as those of one who is privy in obligation (ante, §1077). Having the same interest to learn the facts and the same motive to make correct statements, and being identical with the party (either contemporaneously or antecedently) in respect to his ownership of the right in issue, his admissions may, both in fairness and on principle, be proffered in impeachment of the present claim."

Numerous cases illustrating various applications of this rule are there collected. See also *Morgan, Rationale of Vicarious Admissions,* 42 Harvard L. Rev. 461 and see *Arbaney v. Usel,* 61 Colo. 311, 157 P. 204, *Stone v. O'Brien* 7 Colo. 458, 4 P. 792, *Smith v. Smith,* 16 Colo. App. 333, 65 P. 401.

The declarations here in question were competent and had evidentiary value in that they tended to support the theory that the deceased had agreed to take title in the names of plaintiff and herself.

*Second: The Question of Admissibility of the Testimony of Van Fleet.*

Defendant argues that the trial court erred in receiving the testimony of one Van Fleet, the real estate man who negotiated and closed the sale of the house in question to the plaintiff and decedent, and particularly that part of Van Fleet's testimony to the effect that the plaintiff had signed the note which evidenced the loan.

It is said that Van Fleet's testimony was secondary evidence within the meaning of Rule 43 F 6, which prohibits "evidence of the contents of a writing other than the writing itself" except when the original is not

within the State of Colorado and the offering party has been unable to produce it after the exercise of due diligence. Plaintiff's point is that there was no showing of due diligence as a foundation for the offer of this testimony.

The trial judge has, of course, some measure of discretion with respect to whether the party has made a sufficient showing of due diligence. 20 *Am. Jur.* 385, 386, Sec. 433, *Evidence.* Here, however, there was *no* showing. Nevertheless, we do not consider such failure a basis for reversal inasmuch as the fact of plaintiff's having signed this note is not seriously in dispute. There is no doubt concerning its truth. The plaintiff testified that he signed the note. Another document, the extension agreement (plaintiff's Exhibit B) signed by the deceased, recites this fact. Thus Van Fleet's testimony was cumulative. *Michael v. Hancock,* 138 Colo. 450, 334 P. (2d) 1090; *Davis v. Bonebrake,* 135 Colo. 506, 313 P. (2d) 982. It follows that the trial court's error in receiving the testimony of Van Fleet does not justify reversal.

*Third: Admissibility of Testimony by Plaintiff as to Oral Statements of Decedent to Establish Contract.*

The trial court received the testimony of the plaintiff as to his agreement with the deceased concerning the purchase of the real estate in question over the objection of the defendant that it was hearsay and self-serving. The court's theory was that this was competent testimony because it was a declaration against the "pecuniary and proprietary interest of the declarant." The conversation alleged to have been erroneously received is as follows:

"A. Well, I told her that I had no money for a down payment right at that time. She says, 'Well, daddy, that's all right,' she says, 'I'll make the down payment and close up the deal, and you make all the payments and improvements and everything from there on.' "I said, 'fine, that suits me.' Q. Did you discuss how title would

be taken or who would own this property? A. Well, it was to be purchased in both our names."

■ Defendant's argument that admission of this testimony was error is based on the assumption that it did not tend to prove that a trust came into existence by operation of law, hence was not admissible. However, it was this original agreement, coupled with the several acts of the plaintiff pursuant thereto, and the conduct of the decedent in taking title in her own name and thereafter conveying it to herself and to the defendant in joint tenancy, which taken together and considered in their entirety tend to establish a constructive trust. Under such circumstances, parol testimony is admissible. See *McPherrin v. Fair,* 57 Colo. 333, 141 Pac. 472; *Von Trotha v. Bamberger,* 15 Colo. 1, 24 Pac. 883; *Jerome v. Bohm,* 21 Colo. 322, 40 Pac. 570. Cf. *Fredell v. Eickhoff,* 111 Colo. 465, 142 P. (2d) 1006, and see *Hoff v. Armbruster,* 125 Colo. 198, 242 P. (2d) 604, which while holding that a contract of this kind must be established by clear and convincing evidence, nevertheless recognizes that such testimony is admissible.

■ It is to be noted that the dead man's statute, C.R.S. 1953, 153-1-2, is not applicable since the defendant is not suing or defending as an heir. He is defending as a grantee. Cf. *Risby v. Swan,* 124 Colo. 567, 239 P. (2d) 600.

Although there is confusion in the decisions as to the exact legal basis for receiving this type of testimony, there appears to be agreement that it is not barred by the hearsay rule. It is sometimes rationalized as a declaration against pecuniary interests of the decedent. The trial court so viewed it. See 20 *Am. Jur.* 522, Sec. 608-610. More often it is treated as a verbal act introduced for the purpose of evidencing not the truth of the content of the statement but rather showing that a declaration was in fact made. *Bourne v. Beck,* 116 Kan. 278, 226 P. 759; *Hartford v. Faw* (1932), 166 Wash. 335, 7 P. (2d) 4; *Hawkins v. Perry,* 123 Utah 16, 253 P. (2d) 372.

The rule is succintly stated in *Wigmore* (3rd ed.) Sec. 1770 as follows:

"Where the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings,* their utterance may be proved without violation of the Hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein.

"(1) In issues of *contract* in general, this use of utterances is of course common. In particular:

"(a) The *making of a contract* necessarily involves utterances by conversation, letter, telegram, and the like; and these are admissible under the issue: * * * "

It would seem that the *underlying* reason for reception of this kind of testimony is necessity. Prevention of fraud and inequity outweighs the likelihood that untrustworthy testimony will result. One safeguard is present by reason of the requirement that such testimony in its entirety must be clear and convincing. This, as a practical matter, means that corroboration of the statement of a deceased person is essential. Thus there is less hazard of an injustice from receiving the unsworn declaration than from rejecting it.

It is to be noted that the trial court found contrary to the plaintiff's contention that deceased had agreed to purchase the property in *joint* tenancy and found:

"The Court cannot accept as binding on the Court the testimony of the plaintiff that after he returned from Cheyenne where he happened to be at the time the purchase was consummated, decedent said, in answer to his query, that title to said property was in both of them as joint tenants. It is much more likely that other testimony of the plaintiff, 'She said she purchased the property in both our names,' which is supported by the testimony of plaintiff's witnesses, is the correct version, and it was the intention of plaintiff and decedent that said property would be purchased together, each party owning an undivided half interest therein."

In view of this, it would appear that the trial judge's conclusion that the deed was void insofar as it attempted to "deprive plaintiff of an undivided one-half interest in the property" was correct. The court did not adopt the further legal conclusion that defendant became a constructive trustee of plaintiff's one-half interest in the property. This result, however, follows from the court's finding and conclusion.

The remedy of the constructive trust is explained in 4 *Scott, Trusts,* Sec. 462 (2d ed. 1956). The learned author there states:

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. When a person holds the title to property which he is under an obligation to convey to another, and when that obligation does not arise merely because he has voluntarily assumed it, he is said to hold the property in constructive trust for the other and he is called a constructive trustee of the property."

See also *Restatement, Restitution,* Sec. 160 (1937). That the circumstances of the case at bar come within the scope of this remedy is made clear in Sec. 508.1 of the same work where it is said:

"Similarly if A's money used by B with A's consent in purchasing property, but it was agreed that the title should be taken in A's name, and B wrongfully takes title in his own name, a constructive trust arises."

Here there was an agreement that title was to be taken by deceased in both her name and that of plaintiff. Instead she took title solely in her own name. The fact that plaintiff's money was used to pay off a loan rather than as the initial payment does not vary the applicability of the principle just stated. The deceased's conduct deprived plaintiff of an undivided one-half interest in the property, and she became subject to an equitable duty to convey it to plaintiff. The defendant

as an innocent donee of the property, impressed with the trust, is subject to the same equitable duty. *Scott, supra,* Sec. 510.

Having concluded that there was a valid delivery of the deed from the decedent to the defendant here, it follows that the position of plaintiff that he is entitled to the entire fee is without merit. The decedent had the legal power to convey an undivided one-half interest in the property to the defendant here, hence, defendant became a constructive trustee as to one-half only.

The judgment should be implemented so as to specifically order and direct the defendant to convey an undivided one-half interest to the plaintiff. In other respects the court's determination as to the equities of the parties and their respective rights in the property is correct.

The findings of the trial judge establish all the necessary elements of a constructive trust, and it is upon this basis that the judgment must be affirmed.

Mr. Justice Moore and Mr. Justice Frantz concur.