RALSTON OIL AND GAS COMPANY, a Colorado corporation, and Ernhart, Inc., a Texas corporation, Plaintiffs-Appellees,

v.

The JULY CORPORATION, a Colorado corporation; Wildcat, c/o Howard Dennis, a Colorado general partnership; Discovery I, c/o Howard Dennis, a Colorado general partnership, Gunnison Orr, c/o C.J. Telep, a Colorado partnership, Defendants-Appellants,

and

Pool Gas Company, a Colorado corporation, Defendant-Appellee.

No. 83CA0720.

Colorado Court of Appeals,
Div. II.

Dec. 12, 1985.

Rehearing Denied Jan. 9, 1986.

Certiorari Denied (July) May 5, 1986.

Bader & Cox, Gerald L. Bader, Burton I. Wherry, Karen Hoffman Seymour, Denver, for plaintiffs-appellees.

Brightwell, Reeves, Alderfer & Pech, R. Brent Alderfer, Denver, Jeffrey Herm, Englewood, for defendants-appellants.

Sherman & Howard, P.C., John L. De-Weerdt, Kenneth L. Salazar, Denver, for defendant-appellee Pool Gas Co.

SMITH, Judge.

Several defendants, including July Corporation (July), appeal a judgment of the trial court quieting title to a certain oil and gas lease in Ralston Oil and Gas Company, (plaintiff) and declaring defendants' asserted assignment interests relative thereto void and unenforceable.

July argues that: (1) The evidence was insufficient to support the trial court's findings both of a confidential relationship and of abuse of that relationship; (2) the statute of frauds barred the court's finding of an oral trust or contract because the lease concerns an interest in land; (3) inadmissible parol evidence was utilized to contradict or modify a written contract; (4) the evidence supported finding that July was entitled to the equitable defenses of estoppel and laches; and (5) rescission was an improper remedy because money damages would adequately remedy plaintiff's claim for breach of contract. We reject each of these arguments and affirm the judgment.

Plaintiff acquired record title, as lessee, to an oil and gas lease in Gunnison County known as the McLaughlin Lease. Plaintiff also entered into three farm-out agreements whereby it agreed to drill eight wells capable of commercial production in an area surrounding the McLaughlin lease. By drilling the wells, plaintiff was to acquire certain assignments of proportional interests in the additional surrounding acreage.

Plaintiff contracted with one Zoller to obtain the funds it needed to drill the eight wells. Plaintiff however encountered financial trouble when the first well it drilled collapsed and costs exceeded budget. Available funds eventually ran out when plaintiff had drilled only five of the eight wells.

Jack Ralston (Ralston), plaintiff's president, negotiated with his former business associate and close personal friend, John M. King III (King), to raise additional funds in order to complete drilling of the eight farm-out wells. The trial court found that Ralston, individually and in his capacity as president of plaintiff, reposed special confidence in King and relied on King's expertise and close friendship to assist him in resolving plaintiff's financial difficulties. The court further found that King ultimately formed several corporations in order to raise the funds needed by plaintiff from investors interested in speculating in oil and gas properties. The trial court, by implication, found that these corporations were wholly owned and controlled by King.

Plaintiff conveyed overriding interests in its McLaughlin lease to other King corporations as security for loans which were never made. When plaintiff was finally unable to meet its creditors' demands, it actually obtained a loan of $70,000 from another of King's corporations (Wednesday Corporation), and sold that corporation an overriding royalty in the McLaughlin lease for $5,000.

King and Ralston eventually reached an oral agreement by which Ralston was to convey all of his personal assets and plaintiff was to convey all of its assets, including the McLaughlin lease and its interest in the farm-outs, to defendant July Corporation and to other King corporations. In exchange, King agreed to raise funds through his corporations sufficient to meet the demands of plaintiff's unpaid creditors and to pay expenses necessary to complete its drilling commitments under the farm-out agreements.

The parties further orally agreed that the King corporations were simply to hold the interests transferred to them, including the McLaughlin lease, for subsequent return to the plaintiff and that they would acquire no ownership interest in those assets.

King directed his attorney and his agents to audit plaintiff's books, meet with its creditors, and prepare written contracts. King's attorney arranged for three separate King corporations to handle plaintiff's and Ralston's affairs, and contracts were prepared. Under the terms of the contracts, plaintiff and Ralston were to transfer their interest in the farm-outs and the McLaughlin lease to July. July would accordingly obtain releases of plaintiff's indebtedness from King's Wednesday Corporation, the other King corporations, and plaintiff's other creditors.

Ralston later executed the contracts on behalf of himself, individually, and on behalf of plaintiff in his representative capacity. He signed the documents without reading them and without seeking the advice of independent counsel after King assured him that the documents reflected the oral agreements they had reached earlier. The writings however failed to provide for the subsequent return of the assets to plaintiff and to Ralston.

The court found that the omission was not based upon any purposeful intent on King's part to defraud plaintiff or to modify the original oral agreements that had been reached. Rather, the agreement to reconvey was not reduced to writing, nor

was the list of creditors attached, primarily because of the nature of the confidential relationship that existed between King, acting for his July and other corporations, and Ralston. Ralston was apparently confident that he could rely upon the oral understanding he had reached with King.

Although the document assigning the McLaughlin lease to July was executed by plaintiff, July did not execute it. July nonetheless recorded the assignment in Gunnison County.

The document of assignment also required July to file it, signed both by itself and plaintiff, with the Bureau of Land Management (BLM) within 90 days in order to comply with BLM regulations. July failed to comply with this filing provision. Instead, it filed the assignment with the BLM three and one-half years later—five months after plaintiff filed this quiet title action. The trial court found that July's delay in filing the assignment with the BLM was unreasonable. Indeed, it concluded that the delay manifested the intent of the parties that plaintiff would retain record title of the McLaughlin lease and that July would subsequently return the lease to plaintiff.

The trial court further found that most of the funds generated by King's corporations were not used to fulfill King's obligation under the contracts to pay plaintiff's creditors. Plaintiff's creditors eventually sued to enforce their claims against plaintiff and were awarded judgment in excess of one million dollars.

Because of King's alleged misrepresentations and because of breaches by King's corporations, plaintiff attempted to rescind the contracts within a year. King however assured plaintiff that he would remedy the problems, and plaintiff accordingly withdrew its attempt to rescind. While King's corporations returned title for some assets to plaintiff and to Ralston according to the original oral agreement, July refused to reconvey the McLaughlin lease. The trial court found that plaintiff, without success, reasonably attempted to resolve this prob-

lem with July and, therefore, timely filed this action for rescission and to quiet title.

## I.

July argues that the trial court erred in setting aside the assignment of the McLaughlin lease and in imposing a constructive trust based upon the alleged confidential relationship between King and Ralston on behalf of their respective corporations. July contends that the evidence was insufficient to support the court's findings that a confidential relationship existed and that it was abused by King. We disagree.

When property has been acquired under circumstances in which the holder of legal title may not in good conscience retain his beneficial interest in it, equity imposes a constructive trust and converts the holder into a trustee. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). And confidential relationships may impel or induce a person "to relax the care and vigilance [he] would and should have ordinarily exercised in dealing with a stranger." *United Fire & Casualty Co. v. Nissan Motor Corp.,* 164 Colo. 42, 433 P.2d 769 (1967). Thus, a transfer of property obtained as a result of an abuse of a confidential relationship between two parties may be set aside, and the court may remedy such abuse by imposing a constructive trust.

For a constructive trust to arise from a confidential relationship, the transferor of the property must be justified in his belief that the transferee will act in the interests of the transferor. *Page v. Clark, supra.* And, where there is an oral agreement to reconvey property, it must appear that the agreement was not reduced to writing because of that confidential relationship. In such circumstances, the refusal to perform the promise to reconvey is itself an abuse of confidence sufficient to allow the conveyance to be set aside. *Page v. Clark, supra.*

A party attempting to set aside a transaction on equitable grounds is required to prove the truth of his contentions by a preponderance of the evidence. Proof of a fact by a preponderance of evidence means proof which leads the trier of fact to find that the existence of the contested fact is more probable than not. *Page v. Clark, supra; see McCormick on Evidence* § 339 (E. Cleary 2d ed. 1972). And the findings of the trier of fact must be accepted on review unless they are so clearly erroneous as to find no support in the record. *Page v. Clark, supra.*

Here, Ralston testified extensively about his long friendship with King. They were at one time neighbors. Ralston stated that he assisted King in launching King Resources Company, and later officed there. He helped raise money for King's various enterprises and earned commissions from them. Ralston also testified that King approached him in 1976 and offered to help him cure his financial problems precipitated by drilling wells under his farm-out agreements.

Ralston and King subsequently negotiated several agreements to infuse capital into plaintiff corporation, and King's Wednesday Corporation eventually advanced plaintiff some $75,000. Finally, immediately before Ralston executed the documents assigning the McLaughlin lease to July, he, ostensibly out of appreciation and friendship, arranged for King to purchase the Mesa farm-out which had potential for an immediate turn-around profit of some $200,000 for King.

By contrast, July adduced no evidence to contradict Ralston's testimony about his confidential relationship with King. While July asserts on appeal that King was, at the time of the transaction, incapacitated by a stroke, the trial court found that King was able to conduct business on his own as well as with assistance of his family and employees. We therefore conclude that there is ample evidence in the record to support the trial court's finding of a confidential relationship and of abuse of that relationship, and we decline to disturb these findings upon review. *See Page v. Clark, supra.*

## II.

■ July next argues that parol evidence of the oral agreement to reconvey was inadmissible to vary, explain, or contradict the written contract because the writing is unambiguous and certain and because it adequately expresses the intention of the parties.

The trial court admitted extrinsic evidence because the written contract was induced by King's oral promise to reconvey and because such evidence was necessary to establish the fact of a constructive trust.

We conclude that, under these facts, parol evidence was admissible to establish facts which support the imposition of a constructive trust based upon the confidential relationship between the parties. *See Page v. Clark, supra; Askins v. Easterling*, 141 Colo. 83, 347 P.2d 126 (1959).

## III.

July next contends that the oral agreement by King to reconvey the McLaughlin lease is unenforceable under the statute of frauds, §§ 38–10–106 and 38–10–108, C.R.S. (1982 Repl.Vol. 16A). It further contends that the statute of frauds likewise shields it from plaintiff's claims that circumstances warrant imposition of a constructive trust based upon the trial court's finding of a confidential relationship. These arguments are without merit.

■ An oral contract otherwise unenforceable under the statute of frauds may substitute for a writing if there is part performance of the oral contract. *Ridgeway v. Pope*, 163 Colo. 160, 430 P.2d 77 (1967); *Walk v. Miller*, 650 P.2d 1286 (Colo. App.1981).

■ Here, the trial court found that King partially performed the oral contract by returning title to some of plaintiff's assets to it when it so requested. Under these circumstances, the oral contract is enforceable.

■ Furthermore, a constructive trust is a creature of equity. It springs from a desire to prevent the statute of frauds

from being used as a shield which would otherwise allow a party to be unjustly enriched. *Page v. Clark, supra; Bohm v. Bohm*, 9 Colo. 100, 10 P. 790 (1886). If, therefore, the conditions for imposing a constructive trust are present, such remedy will not be precluded by application of the statute of frauds.

## IV.

July argues that equitable rescission was inappropriate because money damages are an adequate remedy at law, and, even if rescission is an appropriate remedy, plaintiff should pay restitution for reconveyance of the McLaughlin lease. It also contends that rescission was barred by the equitable defenses of laches and estoppel. We disagree.

### A. Rescission

■ Where the facts show that there was a substantial breach of contract, that the injury caused by the breach is irreparable, or that damages would be inadequate, difficult, or impossible to assess, rescission may be granted. *Briggs v. Robinson*, 82 Colo. 1, 256 P. 639 (1927).

■ The party seeking to rescind a contract must return the opposite party to the position he occupied prior to entering into the contract, that is, there must be a substantial restoration of the status quo. *Bankers Trust Co. v. Hall*, 116 Colo. 566, 183 P.2d 986 (1947); *Smith v. Huber*, 666 P.2d 1122 (Colo.App.1983). Returning the parties to the status quo is a matter within the discretion of the trial court under the facts as found by the trier of fact. *Smith v. Huber, supra*.

■ Here, the trial court essentially found that damages were difficult, if not impossible, to determine because the parties had failed properly to identify plaintiff's creditors in the contract and because the King entities which would be liable for payment of damages have insufficient assets to pay them.

Finally, while evidence of what would be required to restore the parties to the status quo was conflicting, the trial court's factu-

al determinations in that regard are supported by the record, and we perceive no abuse of discretion. *See Smith v. Huber, supra.*

### B. Equitable Defenses

 A party must rescind a contract within a reasonable time, but what constitutes a reasonable time depends upon the facts of a particular case and must be determined by the trier of fact. *Lathrop v. Maddux,* 58 Colo. 258, 144 P. 870 (1914); *Eggen v. M. & K. Trailers & Mobile Home Brokers Inc.,* 29 Colo.App. 177, 482 P.2d 435 (1971).

 The doctrine of estoppel is invoked to protect a party who relies to his detriment on the promise or representations of another where the promisor may reasonably expect to induce action or forbearance of a material character. *Mountain Stone Co. v. H.W. Hammond Co.,* 39 Colo.App. 58, 564 P.2d 958 (1977).

 Here, the trial court concluded that plaintiff did not unreasonably delay seeking rescission of the contract. The court also found that the doctrine of estoppel did not bar plaintiff's action for rescission because July had not justifiably relied upon plaintiff's representations. It further found that plaintiff's representations that it would not seek rescission were procured by undue influence exerted by King on behalf of July.

We hold that the findings of the trial court are amply supported by the record, and we decline to disturb them on appeal. *Page v. Clark, supra.* We do not reach July's contention that the trial court erred in concluding that compliance with the BLM filing requirements was necessary for a valid assignment. Under these facts, the rescission and constructive trust remedies are appropriate and a determination of that issue is therefore unnecessary. July's remaining contentions are without merit.

The judgment is affirmed.

KELLY and METZGER, JJ., concur.