24CA1868 Stonig v Midyette 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1868
Jefferson County District Court No. 22CV31081
Honorable Diego G. Hunt, Judge

---

Christine Stonig,

Plaintiff-Appellant,

v.

J Nold Midyette, Mary Katherine Midyette, and Alexander Midyette,

Defendants-Appellees.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LUM
Tow and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Montgomery Little & Soran, P.C., Nathan G. Osborn, Greenwood Village,
Colorado, for Plaintiff-Appellant

Hutchinson Black and Cook, LLC, Keith M. Edwards, Boulder, Colorado; Grata
Law and Policy, Matthew A. Simonsen, Boulder, Colorado, for Defendants-
Appellees J Nold Midyette and Mary Katherine Midyette

Dietze and Davis, P.C., Jennifer Walker, Boulder, Colorado, for Defendant-
Appellee Alexander Midyette

¶ 1    Plaintiff Christine Stonig (Christine) appeals the district court's judgment denying her claim for unjust enrichment and her request for the imposition of a constructive trust against defendants J Nold Midyette (J Nold), Mary Katherine Midyette (Mary Katherine), and Alexander Midyette (Alex).[1]  She also appeals the district court's order precluding her from presenting evidence of monetary damages at trial.  We affirm and remand the case for proceedings consistent with this opinion.

## I.    Background

¶ 2    Christine and Alex began a relationship in 2008, while Alex was incarcerated, and they married in 2011 after signing a premarital agreement.  Christine became friendly with Alex's father, J Nold, during their visits to the prison facility.  In 2009, Christine informed J Nold that she was in financial trouble and that a

---

[1] Mary Katherine Midyette is married to J Nold.  Christine's appeal does not appear to challenge any ruling involving Mary Katherine, but the answer brief was filed jointly on behalf of J Nold, Mary Katherine, and Alex.  We use the parties' first names because multiple parties involved in this suit share the same last name.  We mean no disrespect in doing so.

foreclosure had been initiated on her home (the property) for failure to pay the mortgage.

¶ 3 Shortly thereafter, J Nold began paying Christine's mortgage and contributing to her and her children's living expenses. Between 2009 and 2014, J Nold paid $204,367.50 toward the mortgage. He also secured Christine employment with one of his business entities. J Nold expected to be repaid for his contributions related to the property, but not for other living expenses. He and Christine executed a promissory note in September 2009 for "up to" $500,000 for his property-related expenditures, including mortgage payments, property improvements and repairs, homeowner's insurance, and property taxes (2009 promissory note). The note was secured by a deed of trust against the property, dated January 2010 (2010 deed of trust).

¶ 4 In 2013 and 2014, Christine unsuccessfully attempted to refinance the property to alleviate the high mortgage balance. In December 2014, Christine quitclaimed all of her interest in the property, valued at $925,000, to J Nold and Alex as tenants in common (2014 quitclaim deed). At trial, Christine testified that she took this action with the understanding that J Nold and Alex would

secure a better interest rate by refinancing the property's mortgage under their names and, upon doing so, would return the property to her.  (The district court found that her testimony was not credible.)

¶ 5    J Nold testified that Christine asked him to pay off her mortgage in its entirety.  Because he wanted to protect his investment in the property, he agreed to buy it from Christine by paying off the $500,947 mortgage balance and executing releases for the 2009 promissory note and 2010 deed of trust, effectively forgiving the approximately $900,000 he had advanced to Christine in mortgage and other property-related payments.  J Nold further testified that, at one time, he orally agreed with Christine to let her buy back the property in the future at a price equivalent to the contributions he had made to it.

¶ 6    After Christine signed the 2014 quitclaim deed, J Nold and Alex became the new owners and assumed all financial obligations related to the property.  Christine (and Alex) continued to reside at the property rent-free, while J Nold paid all the expenses and made improvements.

¶ 7    In 2021, Christine and Alex filed for divorce.  J Nold subsequently made an offer in which he and Alex would convey

their interests in the property back to Christine for a $600,000 promissory note, secured by a deed of trust. Christine didn't respond. During the divorce proceedings, Christine and Alex litigated the validity of their premarital agreement, which, as relevant here, defined "separate property" as "[p]roperty owned prior to the marriage of the parties" and "[p]roperty acquired . . . during the parties' marriage, if . . . titled in the name of either party individually." The dissolution court found that the agreement was valid and enforceable.

¶ 8    In 2023, Christine filed the underlying action against J Nold, Mary Katherine, and Alex, asserting claims for quiet title, unjust enrichment, fraudulent inducement, and declaratory relief.[2] As relevant here, Christine claimed that she and J Nold had a confidential relationship; that she quitclaimed the property to J Nold and Alex, who promised to reconvey it to her; and that their failure to keep their promise entitled her to a constructive trust as a remedy for her quiet title and unjust enrichment claims.

---

[2] The district court consolidated Christine's claims into an earlier foreclosure action that J Nold had initiated after Christine asserted in the divorce that the property belonged solely to her.

4

¶ 9    After a three-day bench trial, the district court made the following credibility determinations and findings of fact:

- Beginning in 2009, when J Nold began making mortgage payments on Christine's behalf, there was a mutual understanding that Christine was obligated to repay all amounts advanced towards the property.

- J Nold contributed more than $900,000 to the property.

- Christine's testimony that J Nold promised to reconvey the property to her after refinancing the mortgage for a better rate wasn't credible.

- At one time, J Nold agreed that Christine could buy the property back for the contributions he had made to it.

¶ 10    Based on these findings, the district court concluded that (1) Christine had no legal interest in the property; (2) J Nold and Alex were the property's owners; (3) J Nold wasn't unjustly enriched because he had contributed more than $900,000 to the property; (4) Alex's interest in the property was governed by a valid and enforceable premarital agreement, so unjust enrichment didn't apply; and (5) Christine wasn't entitled to equitable relief in the form of a constructive trust.

¶ 11     After trial, the district court denied Christine's motion to amend the judgment, in which she reasserted that she had proved her unjust enrichment claim and was entitled to a constructive trust.  Christine appeals.

## II.     Unjust Enrichment and Constructive Trust

¶ 12     Christine contends that the district court erred by concluding that J Nold and Alex were not unjustly enriched because (1) the district court applied the wrong law and (2) even if it applied the right law, its factual finding that they contributed more than $900,000 to the property is clearly erroneous.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 13     "Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party."  *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 63.  To prevail on an unjust enrichment claim, a party "must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation."  *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008).

¶ 14     A constructive trust is "remedial in nature and [is] not appropriately pleaded as a separate cause of action." *Indian Mountain Corp. v. Indian Mountain Metro. Dist.*, 2016 COA 118M, ¶ 23. "In general, 'a constructive trust is imposed . . . because the person holding the title to property . . . would be unjustly enriched if he were permitted to keep the property." *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737 (Colo. 1991) (quoting Restatement (Second) of Trs. ch. 12, topic 1, intro. note (A.L.I. 1959)). Therefore, for a plaintiff to be entitled to a constructive trust, they must prove their unjust enrichment (or other equitable) claim.

¶ 15     "[T]he conclusion of the trial court that a party was unjustly enriched is reviewed for abuse of discretion." *Lewis*, 189 P.3d at 1141. A trial court abuses its discretion when its "ruling is manifestly arbitrary, unreasonable, or unfair." *Hock v. N.Y. Life Ins. Co.*, 876 P.2d 1242, 1251 (Colo. 1994). We review de novo the court's application of the governing legal standards. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. 2008). However, we review challenges to the court's underlying factual findings for clear error, meaning that we will reverse only if the findings have no support in the record. *Gagne v. Gagne*, 2019 COA 42, ¶ 17.

## B. Analysis

### 1. The District Court's Application of the Law

¶ 16　Christine contends that the district court applied the wrong legal standard in concluding that J Nold and Alex weren't unjustly enriched. Relying on *Ralston Oil & Gas Co. v. July Corp.*, 719 P.2d 334, 338 (Colo. App. 1985), she argues that the court should have concluded that (1) she and J Nold had a confidential relationship; (2) J Nold promised to reconvey the property to her; (3) J Nold broke that promise; (4) a broken promise to reconvey property between two parties in a confidential relationship is an abuse of that relationship; and (5) abuse of a confidential relationship is all that is required to find unjust enrichment and impose a constructive trust. *See id.* at 338 ("Where there [wa]s an oral agreement to reconvey property, . . . the refusal to perform the promise to reconvey is itself an abuse of confidence sufficient to allow the conveyance to be set aside."); *see also Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979) (noting that a transaction may be set aside for abuse of a confidential relationship if the plaintiff proves that the party in possession of the property at issue refused to act in accordance with the parties' mutual intent).

¶ 17    However, even if we assume that J Nold and Christine were in a confidential relationship (and that the court erred by concluding otherwise) and that J Nold's broken promise to reconvey property (abuse of the relationship) are the only requirements to find unjust enrichment and impose a constructive trust, Christine hasn't demonstrated that the court erred.

¶ 18    In support of her argument, Christine cites J Nold's testimony: "I bought the property and then on a friendship basis . . . I said, 'Christine, . . . at any time you can buy back the property for what I have in it at that time.'" She also points to text messages and related testimony with similar sentiments. The district court acknowledged this testimony in its order.

¶ 19    But Christine cites no evidence in the record indicating that she ever attempted to buy back the property "for what [J Nold] ha[d] in it at that time" or that J Nold rejected her attempt. In fact, the record reflects that J Nold offered to sell the property to Christine during the divorce proceedings for a $600,000 promissory note (considerably less than what he had spent on it), secured by a deed of trust. But, as the district court found, Christine never responded to that offer and instead pursued this litigation. In short, Christine

doesn't point to any evidence that J Nold ever broke his alleged promise to reconvey the property in exchange for the amount he had paid toward it. Thus, even under Christine's proposed legal standard, the court didn't abuse its discretion by concluding that J Nold and Alex weren't unjustly enriched.

## 2. J Nold's Contributions

¶ 20 Christine argues that J Nold and Alex were unjustly enriched by the 2014 conveyance because their contributions to the property were less than its $925,000 value.

¶ 21 First, Christine contends that Alex was unjustly enriched because he contributed nothing to the property. However, the district court concluded that unjust enrichment didn't apply to Alex because his interest was governed by a valid contract (the premarital agreement). *See Pulte Home Corp.*, ¶ 64 ("A party generally cannot recover for unjust enrichment . . . where there is an express contract addressing the subject of the alleged obligation to pay."). Because Christine doesn't challenge that conclusion, we perceive no basis for reversal.

¶ 22 Next, Christine argues that the finding underpinning the district court's rejection of her unjust enrichment claim against

10

J Nold — that he contributed more than $900,000 to the property — was clearly erroneous. We disagree.

¶ 23    Christine asserts that J Nold contributed, at most, $705,316.19 to the property in the form of mortgage payments. However, the record supports the court's findings that J Nold made more than $900,000 in contributions to the property overall. The court found, with record support, that J Nold paid

- at least $204,000 in monthly payments to Christine's mortgage lender between October 2009 and December 2014;

- "$500,947.68 to [Christine's] mortgage lender on or around December 30, 2014";

- "$75,000 for [renovations to install a] basement salon";

- at least $50,000 in property tax "between 2015 and 2024";

- "$25,000 for homeowner's insurance between September 2015 and September 2023"; and

- "$75,000 in property improvements and repairs between 2015 and 2021."

Together, these payments total at least $929,947.68.

11

¶ 24    We consider, and reject, Christine's arguments that the court should have disregarded some of these payments.

¶ 25    First, Christine contends that the nonmortgage contributions are unsupported because J Nold didn't provide "documentation" of them.  However, J Nold testified about the expenditures, and the district court was entitled to rely on his testimony.  *Gagne*, ¶ 17 (noting that we will affirm the trial court's factual findings if there is *any* record support for them); *see also People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982) ("[The] weight of the evidence[] and the inferences and conclusions to be drawn therefrom are all within the province of the trial court.").

¶ 26    Second, Christine contends that the district court shouldn't have considered J Nold's contributions to improvements on the property absent evidence that the improvements increased the property's value.  In support of her argument, she relies on *Martinez v. Martinez*, 638 P.2d 834, 836 (Colo. App. 1981), and *Thomas v. Thomas*, 352 P.2d 279, 280-81 (Colo. 1970).  *Martinez* and *Thomas* concern the consideration due to a cotenant who makes improvements to jointly owned real estate for purposes of partition.

Christine doesn't cite, and we haven't found, any case extending that principle to unjust enrichment claims.

¶ 27 Third, Christine argues that the district court's $900,000 figure is inflated because it "double counted" property taxes and insurance that were already part of J Nold's mortgage payments. However, the district court found, with record support, that J Nold paid those amounts in 2015 and later — *after* he had paid off the mortgage in full.

¶ 28 Fourth, as best we understand her, Christine argues that (1) much of the $900,000 J Nold contributed was a gift and (2) the amount she needed to repay J Nold for him to reconvey the property was unclear. However, we decline to address these arguments because they weren't sufficiently developed in her opening brief. *People v. Relaford*, 2016 COA 99, ¶ 70 n.2 ("We do not consider bare or conclusory assertions presented without argument or development."); *In re Marriage of Dean*, 2017 COA 51, ¶ 31 ("We do not consider the arguments [raised] for the first time in [the] reply brief or those that seek to expand upon the contentions [appellant] raised in her opening brief.").

### III.  Monetary Damages and Set-Off

¶ 29  Finally, Christine contends that the district court erred when it precluded her from presenting evidence of her monetary damages and "set off" as a sanction for her untimely disclosure.  We perceive no basis for reversal.

### A.  Monetary Damages

¶ 30  In her amended complaint, Christine requested "commensurate compensation to avoid unjust enrichment" in the event the district court ruled in favor of J Nold and Alex.  She asserts this statement notified J Nold and Alex of her request for monetary damages.  C.R.C.P. 26(a) requires a party requesting damages to disclose a "computation of any category of . . . damages claimed" "within 28 days after the case is at issue."  However, Christine didn't make any such disclosure until approximately three weeks before trial.

¶ 31  In a pretrial conference held on March 27, 2024, the district court heard arguments pertaining to Christine's damages calculation and issued an oral ruling concluding she had violated her discovery obligations and precluding her from seeking damages because of her delay.  The court entered a minute order (sanctions

14

order) on April 4, 2024, stating, "[T]he [c]ourt finds [a] discovery violation for [the] reasons stated on the record and precludes [Christine] [from] pursuing damages on the unjust enrichment claim."

¶ 32     "The trial court has broad discretion in managing discovery, including an ability to issue discovery sanctions." *Warden v. Exempla, Inc.*, 2012 CO 74, ¶ 32. A court abuses its discretion in ordering a discovery sanction when the decision is manifestly arbitrary, unreasonable, or unfair. *Hock*, 876 P.2d at 1251.

¶ 33     Christine argues that the district court's refusal to allow her to request monetary damages and failure to sufficiently explain its reasoning in the order constitutes an abuse of discretion. However, we can't evaluate her claim because the transcript from the pretrial conference isn't part of the record on appeal. *Id.* at 1252 (the appellant has the duty to designate all portions of the record necessary for appeal). The sanctions order indicates that the district court explained its reasoning orally. And in the absence of this material portion of the record, we assume that it supports the district court's decision to preclude Christine's damages evidence. *Id.* We therefore decline to disturb the court's ruling.

## B.     C.R.C.P. 105 Set-Off

¶ 34     C.R.C.P. 105(e) provides that a party who makes permanent improvements to real property in good faith may obtain a set-off for the value of those improvements in the event the court enters a judgment in favor of the other party for possession of the property. In her answer to J Nold's counterclaim and cross-claim for quiet title, Christine asserted that she was "entitled to an off-set under C.R.C.P. 105."

¶ 35     To the extent the district court's sanctions order precluded Christine from pursuing a set-off under C.R.C.P. 105, we must assume the record supports the court's decision in the absence of the transcript of the proceedings. *Hock*, 876 P.2d at 1252. Moreover, Christine doesn't explain how the adverse ruling prejudiced her — for example, she doesn't explain what evidence she would have presented concerning "permanent improvements" she made to the property or the value of those improvements. C.R.C.P. 105(e). We therefore perceive no reversible error. *See* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *State ex rel. Weiser v. Ctr. for*

*Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 60 ("An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" (quoting *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010))).

## IV. Request for Attorney Fees

¶ 36 J Nold, Mary Katherine, and Alex seek reasonable attorney fees incurred in this appeal under C.A.R. 38, asserting that Christine's appeal is frivolous.

¶ 37 An appeal may be frivolous as filed or frivolous as argued. An appeal is frivolous as filed when "the judgment by the tribunal below was so plainly correct and the legal authority contrary to [the] appellant's position so clear that there is really no appealable issue." *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006) (quoting *Dungaree Realty, Inc. v. United States*, 30 F.3d 122, 124 (Fed. Cir. 1994)). Even if an appeal is not frivolous as filed, the appellant's misconduct in arguing the appeal may justify the conclusion that an appeal is frivolous as argued. *Id.*

¶ 38 While we don't do so lightly, we conclude that the monetary damages portion of the appeal is frivolous as argued.

17

¶ 39 As discussed above, Christine didn't include in the record the hearing transcript for the pretrial conference where the district court heard arguments and made findings as to the untimely disclosure of her damages calculation. This was a violation of C.A.R. 10(d)(3), which requires the appellant to include "transcripts of all proceedings necessary for considering and deciding the issues on appeal."

¶ 40 While the failure to designate the transcript may well have been inadvertent, the sanctions order made clear that the district court made additional findings on the record at the pretrial conference. But instead of attempting to supplement the record with the transcript, Christine argued that the district court abused its discretion because (1) "*the record is void* of any evidence of misconduct or bad faith" related to the untimely disclosure and (2) the sanctions order "[*did*] *not contain sufficient analysis* as to why there is no prejudice or why there could not have been a less severe sanction imposed." (Emphases added.) And her opening brief avoids any reference to the notion that the court gave additional reasoning that wasn't contained in its order. (In fact, the opening brief avoids any reference to the pretrial hearing at all).

Furthermore, even after the answer brief explicitly called attention to the missing transcript and the district court's reference to "reasons stated on the record," Christine continued to argue in her reply brief that the order "contain[ed] insufficient analysis" and that the record contained no evidence of misconduct or bad faith.

¶ 41    For these reasons, we award J Nold, Mary Katherine, and Alex their reasonable attorney fees incurred in connection with responding to Christine's arguments related to the preclusion of evidence of monetary damages.  C.A.R. 38; *see also Northstar Project Mgmt., Inc. v. DLR Grp., Inc.*, 2013 CO 12, ¶ 18 (Because a party failed to designate required transcripts, the "appellate court should consider the full range of possible sanctions.").  We note that this award does *not* include fees incurred in responding to arguments related to the preclusion of C.R.C.P. 105 evidence (to the extent such fees are distinct from those incurred in responding to the monetary damages argument) because it's unclear whether the sanctions order pertains to C.R.C.P. 105.  Finally, although Christine didn't prevail on the remainder of her arguments, they are not so lacking in substance as to be frivolous.  *In re Estate of Shimizu*, 2016 COA 163, ¶ 34 (stating that appellate attorney fees

are "appropriate only in clear and unequivocal cases where no rational argument is presented and, thus, the appeal is frivolous").

¶ 42 We exercise our discretion under C.A.R. 39.1 to remand the case to the district court for a determination of (1) the reasonable attorney fees incurred on appeal in relation to the monetary damages argument and (2) whether those fees should be assessed against Christine, her counsel, or both.

## V. Disposition

¶ 43 The judgment is affirmed, and the case is remanded for proceedings consistent with this opinion.

JUDGE TOW and JUDGE MOULTRIE concur.